Carole Hyman **BURSTEIN**,
Plaintiff-Appellant,

v.

The **STATE BAR OF CALIFORNIA**,
Defendant-Appellee.

No. 80–4017
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 21, 1981.

---

Carole Hyman Burstein, pro se.

Robert M. Sweet, Los Angeles, Cal., for defendant-appellee.

Before AINSWORTH, REAVLEY and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

This is an appeal of a dismissal for lack of personal jurisdiction over the defendant. Plaintiff-Appellant Carole Hyman Burstein brought suit in federal district court in Louisiana against the State Bar of California (the California Bar) alleging breach of contract and negligence, and a deprivation of due process and the equal protection of the laws giving rise to liability under 42 U.S.C. § 1983, all in connection with the grading of her bar examination. Jurisdiction was claimed under 28 U.S.C. § 1332 as to the breach of contract and negligence claims and under 28 U.S.C. § 1343(3) as to the § 1983 claim. Because we agree with the district court that the California Bar does not have contacts with Louisiana sufficient to support the exercise of personal jurisdiction by the district court in this case, we affirm the dismissal.

Burstein, a Louisiana resident licensed to practice law in Louisiana, took the California bar examination in San Francisco in July, 1979. On November 17, 1979, she was notified that she had failed both the multistate and the essay portions of the exam.[1] Believing there to have been an error, Burstein wrote to the California Bar on Janu-

---

1. The examination consisted of two parts: the multistate portion, which was a standardized multiple choice exam graded by ETS, and the essay portion, which concentrated on California law and was graded by the California Bar.

ary 8, 1980, requesting that they recheck her scores. On January 16, 1980, the Executive Director notified her that the exam had been checked and that no scoring errors had been found. Burstein then wrote two letters, the first apparently having gone unanswered, to the Chief Justice of the California Supreme Court, asking for assistance. She received a reply letter from the executive assistant of the Chief Justice informing her that the justices do not intervene in the grading of specific exams and that she should direct her comments to the Committee of Bar Examiners of the State Bar.

On June 27, 1980, Burstein filed suit in the United States District Court for the Eastern District of Louisiana, naming the California Bar and the Educational Testing Service, Inc. (ETS) as defendants. Following a series of motions, a hearing was held on September 17, 1980, at which time the court dismissed ETS from the suit on a motion by Burstein, granted leave to file an amended complaint and granted permission to propound interrogatories pertaining to the issues of personal and subject matter jurisdiction. Burstein's amended complaint, filed on September 25, 1980, alleged a deprivation of her civil rights cognizable under § 1983, breach of contract and negligence, in connection with the grading of her examination. Her claim focused on her belief that, having knowledge of the failing multistate score assigned to her by ETS, the essay graders assigned failing scores to her essay answers without reading them as they did the others, and thus wrongfully denied her admission to the California Bar. Process was served by mail under the Louisiana Long-Arm Statute, La.Rev.Stat.Ann. § 13:3201 (West). On October 27, 1980, the

California Bar filed its answers and objections to Burstein's interrogatories along with a motion to dismiss the amended complaint.[2] The court entered judgment for the California Bar on December 29, 1980, dismissing the case for lack of personal jurisdiction. *Burstein v. State Bar of California*, 503 F.Supp. 227 (E.D.La.1980). Burstein appeals, claiming that the court erred in concluding that it lacked jurisdiction over the California Bar; in denying more extensive discovery; and in declining to rule on the other grounds for dismissal raised by the California Bar.

*I. The Personal Jurisdiction Issue.*

■ The primary issue in this case is whether the federal district court in Louisiana has jurisdiction over the California Bar in a diversity or civil rights action, service of process having been effected by means of the Louisiana Long-Arm Statute. Because the Louisiana Long-Arm Statute has been interpreted to extend to the limits due process allows, *see Standard Fittings Co. v. Sapag, S.A.*, 625 F.2d 630, 638 (5th Cir. 1980), *cert. denied*, 451 U.S. 910, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1981), both parties have framed their arguments with reference to the "minimum contacts" test set out in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and in subsequent cases refining the *International Shoe* test. We agree that the "minimum contacts" test of *International Shoe* is the proper test of the court's personal jurisdiction both as to the diversity actions and the civil rights action, and review the judgment accordingly.[3]

■ As stated in *International Shoe* :

2. In addition to lack of jurisdiction over the person of the defendant, the motion to dismiss claimed that: the court lacks jurisdiction over the subject matter of the alleged causes of action; the plaintiff's action for damages is barred by the Eleventh Amendment; the defendant is clothed with judicial immunity in the performance of the acts of which plaintiff complains; and the amended complaint fails to state a claim upon which relief can be granted.

3. Though the Supreme Court has never ruled on the applicability of the "minimum contacts" test of *International Shoe* to federal courts, this court applies the "minimum contacts" test to federal courts in diversity cases and in federal question cases where Congress has not provided for nationwide service of process and service is in fact effected by way of state long-arm statute. *Standard Fittings Co. v. Sapag, S.A.*, 625 F.2d 630 (5th Cir. 1980) (recently applying "minimum contacts" test to federal court in diversity action); *Lone Star Package Car Co. v.*

[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

326 U.S. at 316, 66 S.Ct. at 158. Since this pronouncement in *International Shoe*, the Supreme Court has given additional guidance as to the kinds of contacts which meet this test, but has also made it clear that "[l]ike any standard that requires a determination of 'reasonableness,' the 'minimum contacts' test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko v. Superior Court of California*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978). Weighing the facts of this case, we find that the " 'quality and nature' of the [California Bar's] activity" are not "such that it is 'reasonable' and 'fair' to require [it] to conduct [its] defense" in Louisiana. *Id.*

In support of her claim that the district court in Louisiana has jurisdiction over the California Bar in this action, Burstein argues that on the basis of numbers alone personal jurisdiction should have been found. The numbers which she cites are the 89 people from law schools in Louisiana who applied for admission to the California Bar during the decade of the 1970's, sending checks and other items from Louisiana to California, and the approximately 53 members of the California Bar who live in Louisiana and are sent membership bills, registration forms for Bar meetings, the State Bar Journal and other literature in Louisiana. This court has stated, however, that "the number of the defendant's contacts with the forum state is not, of itself controlling." *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 495 (5th Cir. 1974). "As important as the existence of some contacts with the forum is that those contacts support an inference that the nonresident defendant purposefully availed himself of the benefits of conducting business in the forum." *Id.* See *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). We agree with the district

*Baltimore & Ohio R.R.*, 212 F.2d 147 (5th Cir. 1954) (applying *International Shoe* to federal court in case in which jurisdiction was predicated on both diversity of citizenship and the presence of a federal question), *noted in F.T.C. v. Jim Walter Corp.*, 651 F.2d 251, 256 n.9 (5th Cir. 1981); *A. L. Black v. Acme Markets, Inc.*, 564 F.2d at 681, 686 n.8 (5th Cir. 1977); *Time, Inc. v. Manning*, 366 F.2d 690, 694 (5th Cir. 1966); *Green v. U.S. Chewing Gum Mfg. Co.*, 224 F.2d 369, 372 (5th Cir. 1955). Neither the Supreme Court nor this court has directly addressed the issue whether the "minimum contacts" test of *International Shoe* applies to federal courts in actions as to which Congress has provided for nationwide service of process. See *Great Western United Corp. v. Kidwell*, 577 F.2d 1256, 1270 n.29 (5th Cir. 1978), *rev'd sub. nom. on other grounds, Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979); *A. L. Black v. Acme Markets, Inc.*, 564 F.2d at 686 n.8; *cf. F.T.C. v. Jim Walter Corp.*, 651 F.2d at 255–57 ("Nothing in *International Shoe* or any later Supreme Court opinion suggests that anything *more* than minimum contacts is required to support jurisdiction over a nonresident Defendant.") (emphasis added). Although we note above that the state long-arm statute involved in this case has been

interpreted to extend to the limits due process allows, and thus the test of amenability to process under the state law is the same "minimum contacts" test which we apply here to determine amenability to process under the federal standard, we also note that the proper analysis would be the same even were the state long-arm statute not so interpreted. This court has recently held that "[i]n a case brought under both diversity *and* federal case jurisdiction, the defendant's amenability to process under state law, which could be critical in a pure diversity based action, is irrelevant." *Terry v. Raymond International, Inc.*, 658 F.2d 398 (5th Cir., 1981) (emphasis added). *But cf. Hilgeman v. Nat'l Ins. Co. of America*, 547 F.2d 298, 300–01 (5th Cir. 1977) (affirming dismissal for lack of proper service of process where the state statute, as interpreted by the court, was not meant to cover the situation involved in the case), *questioned in A.L. Black v. Acme Markets, Inc.*, 564 F.2d at 685 n. 5. As is the case here, neither *Terry* nor *Lone Star* involved an action as to which Congress had provided for nationwide service of process, and thus the question remains open whether that fact is of any significance to the applicability of the "minimum contacts test".

court that the facts alleged by Burstein do not support a finding that the California Bar has purposefully availed itself of the benefits of conducting business in Louisiana as contemplated in *Hanson* and *Cousteau.* As the district court stated:

> The State Bar of California does not avail itself of any Louisiana privileges or services. It does not solicit potential members in this or any state. Those who wish to sit for its examination take it upon themselves to apply to do so, and the State Bar, as a convenience to such persons, mails the necessary materials to the address given by these applicants. Similarly, the State Bar mails certain materials to members regardless of their place of residence rather than attempting to require that all its members maintain California mailing addresses.

*Burstein*, 503 F.Supp. at 229. Burstein herself admits that the California Bar did not actively seek Louisiana applicants. We reject Burstein's contention that the California Bar has purposefully availed itself of the benefits of conducting business in Louisiana by allowing persons to apply for admission to the California Bar from Louisiana or by its mailings to members who live in Louisiana.[4]

Burstein argues that the *Cousteau* case is analogous to her case, and that her case is actually a stronger one for finding personal jurisdiction. We again agree with the district court, however, in concluding that Burstein fails to recognize significant distinctions between her case and the *Cousteau* case which are fatal to her claim that *Cousteau* compels recognition of personal jurisdiction in her case. In *Cousteau*, the plaintiff, a Texas resident, contracted to have defendant, a foreign corporation, make studies of its product and deliver a report and advertising photographs and film to plaintiff in Texas. This court reversed a dismissal by the district court in Texas for lack of jurisdiction over the defendant CEMA, where the essential locus of

the contract on which the suit was based was Texas; essential portions of the defendant's performance were to take place in Texas; and enforcement and protection of the defendant's rights might foreseeably have depended on Texas laws. As the district court noted:

> [The *Cousteau* court] found that Texas, the forum state, was the situs of the contract at issue; the plaintiff here could hardly suggest that Louisiana is the site of any alleged contract between her and the State Bar of California. Too, the *Cousteau* court found that there were contemplated by the contract "reasonably foreseeable consequences" in Texas; the plaintiff here could not be heard to suggest that there were any foreseeable consequences at all in Louisiana of any alleged contract between her and the State Bar. Finally, the *Cousteau* court found "an affirmative, purposeful decision by [the defendant] CEMA to avail itself of the privilege of conducting some business in Texas." *Cousteau, supra,* at 496. As already discussed, there is manifestly no such action of the California State Bar here.

*Burstein,* 503 F.Supp. at 229.

In addition to her argument that the general activities of the California Bar in Louisiana are sufficient to confer jurisdiction on the Louisiana Court, discussed above, Burstein's main arguments are that the connection of the alleged "contract" to Louisiana, the alleged injury in Louisiana caused by the alleged out-of-state tort, and the elements of fairness and convenience involved support the district court's jurisdiction. As to the alleged contract, we consider it a very strained characterization of the facts to speak of the California Bar as having contracted in Louisiana to administer a "proper" exam and to send the "results" to Louisiana. *See Moity v. Louisiana State Bar Association,* 414 F.Supp. 176, 179 (E.D.La.1976). Even accepting this charac-

---

4. We find this case distinguishable from cases where a business enterprise sends its product into the stream of commerce, purposefully availing itself of the privilege of doing business

in distant states. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

terization, however, we have already indicated our agreement with the district court that Louisiana was not the situs of any alleged contract between Burstein and the California Bar. Burstein herself characterizes the contract as one in which the California Bar only became obligated if she not only sent her check to California but also appeared in California at the designated time to take the exam. In *Cousteau*, we noted that "it is generally recognized that 'the place of the contract is the place where the last act necessary to the completion of the contract was done....'" 495 F.2d at 495. By the reasoning of *Cousteau*, then, the case on which Burstein relies so heavily, the situs of the contract clearly is not Louisiana. As to the tort claim, we consider this the kind of fortuity which does not establish the necessary contact with the forum state. The tort alleged by Burstein is negligent grading and the direct injury is the inability to practice law in California. She asserts humiliation and loss of income in Louisiana in one parenthetical in her brief; but if this were sufficient to confer jurisdiction, then the California Bar would be subject to suit in any state in which she might happen to be known. *Cf. World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295–99, 100 S.Ct. 559, 566–68, 62 L.Ed.2d 490 (1980) (fortuity of automobile related injury in Oklahoma). Although a weighing of the inconvenience to the respective parties may in some cases be a factor, *id.* at 292, 100 S.Ct. at 564, the primary fairness concern endorsed by *International Shoe* is the fairness of subjecting a defendant to litigation in a distant forum. *International Shoe Co. v. Washington*, 326 U.S. 310, 317, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). We note, particularly, the Supreme Court's statement in *World-Wide Volkswagen*, 444 U.S. at 294, 100 S.Ct. at 565:

Even if the Defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

Burstein's claim relates to the California grading of the California bar exam which she took in California presumably for the purpose of being licensed to practice law in California. The facts that she and some others were allowed to apply from Louisiana and that some California Bar members receive correspondence from the California Bar in Louisiana do not create a relationship the nature of which is such that the exercise of jurisdiction by the district court here would conform to "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158.

## II. The Denial of Additional Discovery.

Burstein further contends that the district court erred in dismissing the suit for lack of personal jurisdiction without first requiring the California Bar to respond to all of her interrogatories. She argues that she was entitled to this discovery because it concerned facts related to the issue of the court's jurisdiction. Concluding that the information sought in the interrogatories is irrelevant to the issue of personal jurisdiction, we hold that the district court did not err in dismissing the case without first requiring the California Bar to supply the answers sought by Burstein.[5]

**5.** The unanswered interrogatories were the following:

(1) For the past ten years, what percent of all applicants failed the Multistate Examination but passed the California Bar Examination as a whole?

(2) For the past ten years, what per cent of all examinations were reread by reappraisers? How many of this number passed on reappraisal?

(3) Please send plaintiff's Multistate Bar Examination test sheets with a scoring key and anything else necessary for a court-appointed person to recheck the multiple choice scoring.

(4) What per cent of all applicants passed the California Bar Examination each time it was given during the last decade?

*III. The Failure to Rule on the Other Grounds for Dismissal.*

█ Finally, Burstein argues that, in the interest of judicial economy, the district court should have ruled on the other grounds for dismissal raised in the California Bar's motion for dismissal. We believe that the district court acted properly. There is no reason to believe that the possibility of the denial of personal jurisdiction being overturned threatens such a delay and overlap as will outweigh the savings in cases where the denial is not overturned. Moreover, the fact that the district court lacked jurisdiction over the California Bar meant that any judgment on the remaining motions would be void. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (citing *Pennoyer v. Neff,* 95 U.S. 714, 732–33, 24 L.Ed. 565 (1878)).

AFFIRMED.