Carole Hyman BURSTEIN,
Plaintiff-Appellant,

v.

The STATE BAR OF CALIFORNIA,
Defendant-Appellee.

No. 80–4017.

United States Court of Appeals,
Fifth Circuit.

Dec. 14, 1982.

---

Carole Hyman Burstein, New Orleans, La., pro se.

Robert M. Sweet, Los Angeles, Cal., for defendant-appellee.

Before BROWN, WISDOM and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

This is an appeal from an order of the district court, 503 F.Supp. 227, dismissing the suit for lack of personal jurisdiction over the defendant, the State Bar of California (the Bar). Our earlier opinion in the case, *Burstein v. State Bar,* 659 F.2d 670 (5th Cir.1981), was withdrawn and oral argument was granted on the question of the proper standard by which to evaluate personal jurisdiction under these facts. *Burstein v. State Bar,* 668 F.2d 795 (5th Cir. 1982). We now issue the following opinion in place of the earlier one; we affirm the dismissal.

I. FACTUAL AND PROCEDURAL BACKGROUND.

The plaintiff-appellant, Carole Hyman Burstein, is a Louisiana resident licensed to practice law in that state. She took the California bar examination in July, 1979. When the results were final, the Bar notified her that she had failed both the multiple-choice multistate portion and the essay portion of the test.

Burstein believed that her failure must have resulted from an error in grading, so she wrote to the Bar requesting regrading. The Bar replied that a check of her examination revealed no scoring errors. Burstein then wrote two letters to the Chief Justice of the California Supreme Court, again requesting review of her examination. An assistant to the Chief Justice responded that the court did not intervene in individual grading decisions, and referred her back to the Bar.

Burstein then filed this suit against the Bar[1] in federal district court in Louisiana. Process was served under the Louisiana long-arm statute, La.Rev.Stat.Ann. § 13:3201 (West 1968 & Supp.1982). She alleged violation of her rights to due process and equal protection, giving rise to the cause of action under 42 U.S.C. § 1983 (1976 & Supp. IV 1980) provided for by 28 U.S.C. § 1343 (1976 & Supp. IV 1980). She also alleged diversity claims of negligence and breach of contract.

The gravamen of her complaint was that she believed that the Educational Testing Service, which graded the multistate examination, had assigned her someone else's score through computer error. Further, she alleged that the multistate score was given to the essay graders before they read her paper, and the fact that the multistate score was so low led them to fail her on the essay portion either without reading her paper or after only a cursory review.

In response, the Bar alleged a variety of grounds for dismissal, of which the only one relevant here is lack of personal jurisdiction.[2] The court ordered that discovery be restricted to facts relevant to personal and subject-matter jurisdiction; Burstein served eight interrogatories on the Bar. It answered four, but refused to

---

**1.** Burstein's original complaint also named the Educational Testing Service (ETS), which prepared and graded the multistate examination, as a defendant. The claim against ETS was later dismissed on Burstein's motion.

**2.** We note that the Bar failed to challenge venue in its motion. Such challenges are made by motions under Fed.R.Civ.P. 12(b)(3), but Fed.R.

Civ.P. 12(g) provides that a party may only make one rule 12(b) motion (with exceptions in rule 12(h)(2) which are not relevant here). Failure to raise all possible grounds in the first motion waives those not mentioned. Since a motion to dismiss for lack of personal jurisdiction is a rule 12(b)(2) motion, the Bar has waived its right to object to venue.

answer the others. The court declined to compel discovery and granted the Bar's motion to dismiss for lack of personal jurisdiction.

Burstein raises several contentions here. We will discuss her arguments that there was personal jurisdiction and, alternatively, that dismissal was premature because of the denial of discovery. Because we accept neither of these arguments, we affirm the dismissal; it is therefore unnecessary to proceed to Burstein's request for summary judgment in her favor or for an order limiting the Bar's other procedural defenses.

## II. PERSONAL JURISDICTION.

 The starting point for our inquiry is the realization that a federal court may only exercise personal jurisdiction if it is authorized to do so by law and such exercise does not violate the Constitution. In a federal question case in federal court, the relevant constitutional provision is the due process clause of the fifth amendment, a provision whose application in this context is not well defined.[3] Fortunately, we need not reach that problem, since we find that personal jurisdiction in this case is not authorized by the applicable law, i.e., section 1983 and Fed.R.Civ.P. 4(e).

In order to present our analysis clearly, we first undertake an explication of the provisions of rule 4(e). We then explain and harmonize the relevant Fifth Circuit cases; finally, we apply the standard thus developed to the facts of this case.

### A. Rule 4(e).

Fed.R.Civ.P. 4 provides for service of process in cases brought in federal court. While by its terms rule 4(d) might well apply to this case, it is clear that rule 4(e) is designed for use to obtain service on parties not resident within the forum state, and by negative implication it excludes rule 4(d). See 2 J. Moore, J. Lucas, H. Fink, & C. Thompson, *Moore's Federal Practice*

¶¶ 4.32[1], 4.41–1[3] (1982). We thus direct our attention solely to rule 4(e), which has three provisions relevant to our analysis.

The first part of the first sentence of rule 4(e) applies "[w]henever a statute of the United States ... provides for service of a summons ... upon a party not an inhabitant of or found within the state in which the district court is held ..." and the federal statute or a court order thereunder prescribes a manner of service. Jurisdiction is then asserted by the federal statute and service is made "under the circumstances and in the manner prescribed by the statute or order ...."

The second part of the first sentence applies when a federal statute provides for service, thus asserting jurisdiction, but does not prescribe the manner of service. In that case, "service may be made ... in a manner stated in this rule," i.e., rule 4.[4]

 Neither one of these provisions applies to this case, because neither section 1983 nor section 1343 even "provides" for service. It is thus necessary to examine the second sentence of rule 4(e), which states:

> Whenever a statute ... of the state in which the district court is held provides ... for service of a summons ... upon a party not an inhabitant of or found within the state, ... service may ... be made under the circumstances and in the manner prescribed in the statute....

The clear import of the "under the circumstances" language, at least where the assertion of jurisdiction and not just the service of process depends on the state statute, is that a federal court, even in a federal question case, can use a state long-arm statute only to reach those parties whom a court of the state could also reach under it.

We note that this is the same conclusion reached by a leading commentator:

> On balance, then, it would seem that state law always should govern amenability when a state statute is used pursuant

---

3. See note 8 *infra*.

4. The source for the manner of such service is evidently not limited to rule 4(e); *see* part II.B.

*infra* for a discussion of the use of rule 4(d) via this portion of rule 4(e) in *Black v. Acme Markets, Inc.*, 564 F.2d 681 (5th Cir.1977).

to rule 4(e). Although the opposite result has some appeal in that it permits effectuation of federal interests in a broader range of suits, it is inconsistent with the apparent intent of the draftsmen of rule 4(e) to use state provisions for service in order to permit the federal courts in a state to hear those cases that could be brought in the state's own courts when a basis for asserting federal subject matter jurisdiction exists.

4 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1075 at 313 (1969).[5]

### B. Fifth Circuit Cases.

The leading Fifth Circuit cases on personal jurisdiction in federal question cases are all distinguishable because they do not involve both a federal statute which does not assert jurisdiction and service under the second sentence of rule 4(e). None of them is inconsistent with the result here.

The earliest of these cases is *Lone Star Package Car Co. v. Baltimore & Ohio Railroad,* 212 F.2d 147 (5th Cir.1954). *Lone Star,* a suit filed in a district court in Texas, involved both a diversity claim and a claim under the Carmack Amendment, 49 U.S.C. § 20. Lone Star filed a third-party complaint against the B & O Railroad, and service was made on the B & O's agents in Texas. The Fifth Circuit upheld personal jurisdiction over the B & O, with a broad statement that in a federal question case the court was not bound by limitations on state courts, there by the requirement that the B & O be "doing business" in Texas. The *Lone Star* court stated that "insofar as cases are governed by federal law, the question of whether they are to be tried in one locality or another is now to be tested ... simply by basic principles of fairness. *International Shoe Co. v. State of Washington,* 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95]. . . ." 212 F.2d at 155.

The crucial distinction between *Lone Star* and this case is that *Lone Star* involved in-state service, and thus came under rule 4(d) rather than 4(e).[6] The *Lone Star* court held service proper under either rule 4(d)(3), which is completely independent of state law, or rule 4(d)(7), which only requires that service be made "in the manner prescribed by the law of the state in which the district court is held. . . ." Rule 4(d)(7) does not have the "under the circumstances" language of the second sentence of rule 4(e), which is the language that we hold applies the limitations on the state court to the federal court. Thus *Lone Star* neither controls nor is inconsistent with this case.

Only last year, the Fifth Circuit decided *Federal Trade Commission v. Jim Walter Corp.,* 651 F.2d 251 (5th Cir.1981). In that case, suit was filed in the Northern District of Texas and process was served on the defendant in Florida, so rule 4(e) did apply. The cause of action, however, was under section 9 of the Federal Trade Commission Act, 15 U.S.C. § 49 (1976), which has been interpreted as authorizing nationwide service of process.[7] Thus, as the *Jim Walter Corp.* court noted, the relevant portion of rule 4(e) was the first sentence. 651 F.2d at 254. The court went on to hold that under those circumstances, the only "minimum contacts" required by due process were contacts with the United States, not Texas.[8] Again, however, *Jim Walter Corp.*

---

**5.** The other leading commentator in the field takes the opposite position. J. Moore, J. Lucas, H. Fink, & C. Thompson, *Moore's Federal Practice* ¶ 4.41–1[1] at 4–424 (1982). Since the entire discussion of amenability under rule 4(e) consists of a reference to the discussion of amenability under rule 4(d), *id.* ¶ 4.24[7], with no explanation for the similarity in analysis and result despite the difference in language between the two rules, we find Wright & Miller more persuasive.

**6.** *See* text *supra* for a discussion of the roles of rules 4(d) and 4(e).

**7.** *Jim Walter Corp.,* 651 F.2d at 254; *Federal Trade Commission v. Browning,* 435 F.2d 96 (D.C.Cir.1970).

**8.** The *Jim Walter Corp.* court reached this conclusion by a simple chain of logic: fifth amendment due process would require the same method of analysis as fourteenth amendment due process in a state case; the Supreme Court's then most recent discussion of the fourteenth amendment, *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), analyzed it largely in terms of a limitation on state sovereignty, *Id.* at

did not involve the second sentence of rule 4(e), and thus does not control this case.

*Terry v. Raymond International, Inc.,* 658 F.2d 398 (5th Cir.1981), *cert. denied,* 456 U.S. 928, 102 S.Ct. 1975, 72 L.Ed.2d 443 (1982), also decided last year, involved both admiralty and diversity claims. One defendant filed a third-party complaint against the other, and served it on the third-party defendant's only employee in Louisiana, the state where the district court sat. The *Terry* court held that amenability to jurisdiction must be measured under federal, not state, law[9] and that service was proper under rule 4(d)(7).

The court rested its holding that amenability was to be measured by a federal standard on *Lone Star,* another rule 4(d)(7) case. It must again be stressed that rule 4(d)(7) only requires that service be made "in the manner" prescribed by state law, not "under the circumstances" so prescribed. Given rule 4(e)'s carefully drawn distinction between the assertion of jurisdiction by a federal statute and by a state statute,[10] we do not believe *Terry's* language extends to a case where assertion of jurisdiction is made only under the state long-arm statute. In such a case, amenability must be measured by the state standard.

One final Fifth Circuit case that merits discussion is *Black v. Acme Markets, Inc.,* 564 F.2d 681 (5th Cir.1977). It involved an antitrust suit filed in Texas, with service on the Texas Secretary of State and by mail in Massachusetts on the defendant, both under the Texas long-arm statute. The *Black* court noted that, since section 12 of the Clayton Act, 15 U.S.C. § 22 (1976), provided for nationwide service of process, the only question to which state law was relevant was the propriety of the manner of service. The court looked to the first sentence of rule 4(e), since there was a federal statute providing for service, and observed that the case fell into the category of cases where the federal statute provides for service but does not supply a method for it. Rule 4(e) states that in such cases "service may be

293–94, 100 S.Ct. at 565–66; hence, the relevant question in a federal case was the limitations on federal sovereignty. *Jim Walter Corp.,* 651 F.2d at 255–56. The *Jim Walter Corp.* court then adopted the analysis of the dissenting Justices in *Stafford v. Briggs,* 444 U.S. 527, 553–54, 100 S.Ct. 774, 789–790, 63 L.Ed.2d 1 (1980) (Stewart and Brennan, J.J., dissenting) (the majority in *Stafford* did not reach the constitutional issue), that all due process required was minimum contacts with "the sovereign that has created the court." 651 F.2d at 256 (quoting *Stafford v. Briggs,* 444 U.S. 527, 554, 100 S.Ct. 774, 790, 63 L.Ed.2d 1 (1980) (Stewart and Brennan, J.J., dissenting)). Thus, in a federal question case, the only constitutional requirement for personal jurisdiction would be minimum contacts with the United States; of course, there might also be statutory limitations on venue and service of process.

We need not decide the question whether the rationale of *Jim Walter Corp.* is affected by *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* —— U.S. ——, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). The Supreme Court there decisively rejected sovereignty as the basis for fourteenth amendment due process limitations on personal jurisdiction:

The requirement that a court have personal jurisdiction flows not from Art. III, [as does the requirement of subject matter jurisdiction,] but from the Due Process Clause. The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty.

*Id.* at ——, 102 S.Ct. at 2104 (footnote omitted).

Although *Jim Walter Corp.* involved the due process clause of the fifth amendment, rather than that of the fourteenth amendment, this court in *Jim Walter Corp.* suggested that the conceptual requirements of both due process clauses were the same, albeit relating to different sovereigns. If this is true, then the rationale of *Jim Walter Corp.* may have been undermined by *Insurance Corp. of Ireland.*

Finally, we observe that, even if the rationale of *Jim Walter Corp.* is in doubt, its result may well survive. We need not decide the status of either the rationale or the result to resolve this case, so we leave both questions for another day.

**9.** The *Terry* court held that a federal standard controlled the third-party defendant's amenability despite the fact that no federal claim was asserted against it, because there was a federal claim in the suit viewed as a whole. As the *Terry* court noted, 658 F.2d at 403, the same situation occurred in *Lone Star.*

**10.** *See* the discussion of the structure of rule 4(e) in part II.A., *supra.*

made ... in a manner stated in this rule ...," i.e., rule 4.

The court then referred to rule 4(d)(7), which authorizes service on a corporation "in the manner prescribed by the law of the state in which the district court is held : ... " It observed that, because rule 4(d)(7) does not have the "under the circumstances" language of rule 4(e), a plausible reading of the rule would allow the court to apply the long-arm statute without regard to the state limitations on its use; however, the court found it unnecessary to decide the question, because it held that Texas courts could have used the long-arm to reach the defendant in the case. 564 F.2d at 685 & n. 5.

This analysis is totally consistent with ours, because *Black* involved the first sentence of rule 4(e), not the second. The *Black* court specifically observed that the provision of the first sentence of rule 4(e) that applies when the federal statute supplies no manner of service only required service "in a manner stated in this rule" and that rule 4(d)(7) only required service to be "in the manner prescribed by" state law, "*without reference to the circumstances required under state law.*" 564 F.2d at 685 n. 5 (emphasis in original). Such is clearly not the case when the second sentence of rule 4(e) is used.

■ We therefore conclude that personal jurisdiction over the Bar in this case is proper only if a Louisiana court could have asserted it. Since the Louisiana long-arm statute reaches to the full extent permitted by fourteenth amendment due process, *Standard Fittings Co. v. Sapag, S.A.,* 625 F.2d 630 (5th Cir.1980), *cert. denied,* 451 U.S. 910, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1981), the question then becomes whether a Louisiana court could constitutionally assert such personal jurisdiction.[11]

### C. Constitutional Limitations on State Court Jurisdiction.

■ The Supreme Court has recently restated the fourteenth amendment due process limitations on state exercise of personal jurisdiction:

The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty. Thus, the test for personal jurisdiction requires that "the maintenance of the suit ... not offend 'traditional notions of fair play and substantial justice.' " *International Shoe v. Washington,* 326 U.S. 310, 316 [66 S.Ct. 154, 158, 90 L.Ed. 95] (1945), quoting *Milliken v. Meyer,* 311 U.S. 457, 463 [61 S.Ct. 339, 342, 85 L.Ed. 278] (1940).

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* —— U.S. ——, ——, 102 S.Ct. 2099, 2104–05, 72 L.Ed.2d 492 (1982) (footnote omitted). The Court noted, however, that "our holding today does not alter the requirement that there be 'minimum contacts' between the nonresident defendant and the forum state." *Id.* at —— n. 10, 102 S.Ct. at 2105 n. 10. Nevertheless, when we examine the facts of this case for the adequacy of the Bar's relationship to Louisiana, the standard must be simply "traditional notions of fair play

11. Several courts have applied the statutory, rather than constitutional, limitations on state long-arm statutes in federal question cases. *Hilgeman v. National Ins. Co.,* 547 F.2d 298 (5th Cir.1977) (case under Securities Acts, which provide for nationwide service of process; use of Alabama long-arm thus arguably under rule 4(d)(7) through 4(e), not 4(e) alone); *Time, Inc. v. Manning,* 366 F.2d 690 (5th Cir. 1966) (plaintiff alleged diversity, defendant argued was copyright case and thus federal question; court said in any event must measure personal jurisdiction by state statutory standards).

The *Manning* court stated that "the propriety of service issuing from a federal court need not necessarily be tested by the same yardstick as is the constitutional limitation upon service of process from a state court, [but] the latter standard provides a helpful and often-used guideline." *Id.* at 694 (footnote omitted). We understand this statement to refer to the constitutional limitations on federal courts. Our holding is consistent with this, because we find the fourteenth amendment restrictions binding on the district court here only through the action of a federal statute, rule 4(e). .

and substantial justice," with "contacts" viewed as a way of demonstrating whether the standard is satisfied.

Burstein alleges that the activity of the California Bar which relates to Louisiana is of sufficient quality and quantity to allow suit there without violating fair play and substantial justice. In support of this allegation, she asserts: (1) that approximately fifty-three members of the California Bar live in Louisiana, and thus receive membership bills, the California Bar Journal, and other literature sent to Louisiana by the California Bar; (2) that eighty-nine Louisiana law school students applied to take the California bar examination during the 1970s, and consequently received application forms and results from and sent checks to the California Bar; (3) that her alleged contract with the Bar had sufficient relationship to Louisiana to support a suit on it there; and (4) that the Bar's alleged tort of negligent grading had sufficient consequences in Louisiana to permit personal jurisdiction. We will discuss first whether either of the latter two of these allegations alone will justify personal jurisdiction, and then whether the Bar's contacts as a whole will.

### 1. The Alleged Contract.

■ For the proposition that her alleged contract with the Bar alone will support suit in Louisiana, Burstein relies on *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir.1974), and *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). We believe that neither case compels a conclusion in her favor.

In *Cousteau*, the Texas plaintiff had visited the defendant in France, and they subsequently concluded a contract by mail. The defendant agreed to test a product of the plaintiff's and film the tests, with the results and film to be shipped to the plaintiff in Texas. The plaintiff began to market the items with advertising claiming that the defendant's alleged principal, Jacques Cousteau, had endorsed them. The defendant persuaded the plaintiff's retailer to stop selling them because of the allegedly unauthorized advertising; the plaintiff sued the defendant in federal court in Texas for breach of contract and various torts. The Fifth Circuit reversed the district court's finding of no personal jurisdiction over the defendant.[12]

We believe, however, that *Cousteau* is distinguishable on its facts. In the first place, there was clearly a contract in *Cousteau;* the existence of a contract in this case is highly debatable. Further, the contract in *Cousteau* became effective upon the mailing of the plaintiff's acceptance from Texas; even if there is a contract here, it is unclear whether it became effective upon Burstein's mailing of the application and fee from Louisiana, upon the Bar's finding that she passed the character examination, upon her arrival at the testing place in California on the proper day, or at some other time. Moreover, the performance the Cousteau contract required of the defendant in Texas was delivery of the film and reports, an integral element of a contract for goods and services. Delivery of Burstein's bar examination results to Louisiana was not such an integral element of the Bar's performance of the alleged contract, which was purely for services. The *Cous-*

---

**12.** The *Cousteau* court characterized the constitutional test as two-pronged: the defendant must have minimum contacts with the forum state and it must be fair and reasonable for the state to require the defendant to defend the suit there. 495 F.2d at 494. Given the Supreme Court's statement in *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* —— U.S. ——, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), that the single test is that "the maintenance of the suit ... not offend 'traditional notions of fair play and substantial justice,' " *id.* at ———, 102 S.Ct. at 2105 (quoting *International Shoe*

*Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)), and that the requirement of minimum contacts is a result of that test, *id.* —— U.S. at —— n. 10, 102 S.Ct. at 2105 n. 10, we do not believe that the *Cousteau* court's characterization of the test as "two-pronged" can any longer be justified. Nevertheless, the test applied by the *Cousteau* court was if anything more stringent than that required by the Constitution, so we must examine the facts of that case more closely to demonstrate the differences between it and the present one.

*teau* court found that Texas law might well govern the interpretation of the contract; it seems most unlikely that Louisiana law would control the interpretation of any contract in this case. In short, the "substantial connection" with and likely consequences in Texas of the *Cousteau* contract, 495 F.2d at 497, are wholly absent from this case.

In its consideration of the application of general principles of fairness to the facts in *Cousteau,*[13] the court noted that Texas had a "legitimate and reasonable interest in providing a forum for [the] suit," because there was "a rational nexus between this lawsuit and a Texas forum." *Id.* at 498 (footnotes omitted). No such nexus is apparent here. As will be discussed *infra,* Louisiana's interest in providing a forum for this suit is minimal. Since we find such substantial factual differences, we believe *Cousteau* does not control this case.

Similarly, we find *McGee, supra,* inapplicable. In *McGee,* the Texas defendant's sole connection with the California forum was the mailing to the decedent at his California home of an offer to renew a life insurance contract. The Supreme Court upheld the California courts' jurisdiction over the subsequent suit on the insurance contract by the plaintiff beneficiary. The Court's analysis took note of the fact that the contract had a "substantial connection" with California. 355 U.S. at 223, 78 S.Ct. at 201. This substantial connection arose from several facts: the contract was delivered in California, the premiums were mailed from there, and the insured died there; further, California had a "manifest interest" in seeing that California residents got the benefits of their insurance contracts. *Id.* The Court observed that the Californians, usually holders of small claims, might be unable to pursue nonresident insurers to their home states and that the crucial witnesses in such suits would often be found in California. The Court thus held that any inconvenience to the defendant in having the suit in California did not amount to a denial of due process.

One final relevant aspect of the facts of *McGee* is that California had expressed its interest in being the forum for such suits by passing a special statute to authorize service of process on nonresident insurers. *Id.* at 221, 78 S.Ct. at 200. While it is not clear whether the *McGee* Court relied on that fact, the Supreme Court has subsequently noted it in distinguishing *McGee* from other cases. *See Kulko v. Superior Court,* 436 U.S. 84, 98, 98 S.Ct. 1690, 1700, 56 L.Ed.2d 132 (1978); *Hanson v. Denckla,* 357 U.S. 235, 252, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *cf. Shaffer v. Heitner,* 433 U.S. 186, 214–15, 97 S.Ct. 2569, 2584–2585, 53 L.Ed.2d 683 (1977) (noting incongruence between Delaware's asserted interest in the suit and Delaware statute).

The first distinction between *McGee* and this case is, again, the disputability of the existence of a contract here. In *McGee,* the defendant solicited the contract; here, Burstein had to take the initial step of seeking an application. There was no delivery of the contract (if any) in this case. It is true that Burstein mailed the application fee from Louisiana, but that is not a precise analogy to the premium mailing, since the premiums were the only performance required of the decedent in *McGee,* while Burstein, at least before the Bar could be required to admit her to practice, had to take and pass the examination. Certainly Louisiana's interest in insuring that those few of its residents who take out-of-state bar examinations have them graded fairly is much less substantial than California's interest in preventing out-of-state insurance companies from wrongfully refusing to pay the claims of California residents. There is no analog here to the California service of process statute used in *McGee.* Finally, any witnesses necessary to Burstein's suit (or any Louisianan's suit against an out-of-state bar association) will not be in Louisiana.

The only factor favoring jurisdiction in *McGee* that is clearly present here is that

---

**13.** *See* note 12, *supra,* for an explanation of the *Cousteau* court's method of constitutional analysis.

Burstein may be financially unable to pursue the Bar to California. We decline to predicate jurisdiction solely on that circumstance. We thus find that the alleged breach of contract alone does not justify the exercise of personal jurisdiction in this case.

### 2. The Alleged Tort.

■ Burstein also alleges that the Bar negligently graded her examination in breach of a duty of care it owed to her, and that the resulting injury to her in Louisiana will permit this court to find personal jurisdiction over the defendant. While this theory has some surface plausibility,[14] it founders on the fact that there is absolutely no evidence that Burstein suffered any harm in Louisiana.

Assuming that there was a duty owed her and that the Bar breached it, the sole resulting harm is that Burstein cannot practice law in California. She has not alleged any injury to her professional reputation in Louisiana, nor any decrease in her law practice as a result of the Bar's actions. She has not indicated that being licensed to practice law in California would have increased her practice in Louisiana. Thus, there is absolutely nothing on which to predicate any finding of injury in Louisiana to support jurisdiction under this theory.

### 3. The Bar's Total Contacts With Louisiana.

Since we cannot sustain personal jurisdiction solely on the basis of those actions of the Bar that gave rise to this suit, the only remaining question is whether the totality of its relations with Louisiana are such that maintenance of this suit would not offend "traditional notions of fair play and substantial justice." *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* —— U.S. ——, ——, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

■ The Bar's total alleged contacts with Louisiana are that approximately fifty of its members live there and thus receive mailings there, including membership fee statements; that those members pay their membership fees by checks mailed from Louisiana; and that some eighty-nine students from Louisiana law schools applied to take the California bar examination during the 1970s. There is no allegation that these students were Louisiana residents, although presumably most of them were, at least when they applied.

Any determination as to fairness must result from a weighing of all the relevant facts; the inquiry is therefore highly specific to each case and not susceptible of easy determination. "[F]ew answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.'" *Kulko v. Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978) (quoting *Estin v. Es-*

14. *See Brown v. Flowers Indus., Inc.,* 688 F.2d 328 (5th Cir.1982). We observe that the Supreme Court discussed causing an "effect" in the forum state as a potential basis for personal jurisdiction in *Kulko v. Superior Court,* 436 U.S. 84, 96–98, 98 S.Ct. 1690, 1699–1700, 56 L.Ed.2d 132 (1978). In *Kulko,* a New York couple had been divorced and the wife had moved to California. The husband, who had been awarded custody, permitted his daughter to go live with her mother. In a subsequent action for increased child support filed in a California state court, the Supreme Court held that there was no personal jurisdiction over the father.

The California Supreme Court had upheld jurisdiction on alternative grounds, of which one was that the father had caused an "effect" within the state. The United States Supreme Court neither accepted nor rejected the test; it simply held that the test had not been satisfied. *Id.* at 96, 98 S.Ct. at 1699. It also noted that the "effect" in the case was not that intended by the drafters of the Restatement of Conflict of Laws (the source of the test); the "effects" contemplated were apparently tort injury or results of commercial activity. *Id.*

In the present case, of course, tort injury in Louisiana is precisely what Burstein claims to have alleged. We hold, however, that there is no adequate allegation of injury in Louisiana. *See* text *infra.* Further, the *Kulko* Court noted that, even by its own terms, the "effects" test required that the exercise of personal jurisdiction also not be unreasonable. 436 U.S. at 96, 98 S.Ct. at 1699. We believe such exercise here would be unreasonable. *See* part II.C.3. *infra.*

*tin,* 334 U.S. 541, 545, 68 S.Ct. 1213, 1216, 92 L.Ed. 1561 (1948)). Nevertheless, some guidance can be gleaned from previous cases, particularly in identifying the factors relevant to the decision.

The leading Supreme Court cases have evaluated the facts in light of a number of considerations. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), looked at the inconvenience to the defendant of having to litigate away from its residence, the relationship between the defendant's contacts with the forum and the cause of action, the quality and nature of the contacts, and the extent to which the defendant "exercise[d] the privilege of conducting activities within [the] state ... [and] enjoy[ed] the benefits and protection of the laws of that state." *Id.* at 319, 66 S.Ct. at 159.

In *McGee v. International Life Insurance Co., supra,* the Court considered some new elements: the interest of the forum state in maintaining the suit, the difficulty to the plaintiff of pursuing the defendant to its home state, and the location of the likely witnesses. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), laid particular emphasis on whether the defendant had "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 253, 78 S.Ct. at 1239 (citing *International Shoe, supra*). *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), which applied the *International Shoe* line of cases to *in rem* jurisdiction, observed that if the law of the forum state would be used to decide the controversy, that would support

but not establish personal jurisdiction. It also stressed *Hanson's* concern with "purposeful availment" of the privileges of the forum. The Court reiterated that emphasis in *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), and noted that the only reason the forum state in that case had any contact with the controversy was because the plaintiff had moved there. The *Kulko* Court also stated that a reasonable person in the defendant's place would not have expected his actions to result in having to litigate so far from his home, citing *Shaffer v. Heitner, supra. Kulko,* 436 U.S. at 97–8, 98 S.Ct. at 1699–1700. Finally, *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), identified as relevant:

> the plaintiff's interest in obtaining convenient and effective relief, ... at least when that interest is not adequately protected by the plaintiff's power to choose the forum ...; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies ....

*Id.* at 292, 100 S.Ct. at 564 (citations omitted).[15] The Court went on to state: "[T]he foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567 (citing *Kulko v. Superior Court, supra,* and *Shaffer v. Heitner, supra*).

---

**15.** It should be noted that *World-Wide Volkswagen* and, to a lesser extent, *Hanson v. Denckla* rely on the sovereignty rationale for due process limitations on state-court personal jurisdiction, which the Court repudiated in *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, supra. See World-Wide Volkswagen,* 444 U.S. at 291–94, 100 S.Ct. at 564–565; *Hanson,* 357 U.S. at 257, 78 S.Ct. at 1241. We believe, however, that the results of those cases are still good law.

*Insurance Corp. of Ireland* made it clear that minimum contacts were still required. 102 S.Ct. at 2104–05 n. 10. Further, in *Hanson* the

reference to "territorial limitations on the power of the respective States," 357 U.S. at 251, 78 S.Ct. at 1238, was only one sentence; it was not crucial to the result, which was reached by an analysis of the factors identified in earlier cases. *World-Wide Volkswagen* relied more heavily and more explicitly on the sovereignty reasoning, 444 U.S. at 291–94, 100 S.Ct. at 564–565, but also looked to foreseeability and purposeful availment. *Id.* at 297–98, 100 S.Ct. at 567–568. We believe the use of those factors in a reasonableness analysis is clearly still permissible after *Insurance Corp. of Ireland.*

After viewing the facts of this case in light of the foregoing considerations, we find that it would offend "traditional notions of fair play and substantial justice" to require the Bar to defend this suit in Louisiana. While some of the factors support jurisdiction, on balance the entire case does not.

Unquestionably, it would be inconvenient for the Bar to litigate in Louisiana, but that is an aspect of every suit against a nonresident defendant. It seems likely, however, that the mere inconvenience to the Bar is less than that to Burstein if she were required to litigate in California.

The cause of action here is essentially unrelated to the Bar's contacts with Louisiana; the only connection is that Burstein's application was mailed from Louisiana and her score received there. Neither of those occurrences are truly relevant to her cause of action for misgrading, of which all the essential elements must have occurred, if at all, outside of Louisiana. Because of this, any witnesses likely to be called, other than Burstein herself, are located outside of Louisiana.

One of the aspects of this case that weighs most heavily against allowing suit in Louisiana is the relative interests of the two potential forum states. Louisiana's interest in the process of admission of its residents to the bars of other states is minimal at best. It certainly bears no comparison to the state interest in *McGee,* which was to give residents who held insurance policies issued by out-of-state companies (potentially a much larger group of residents than applicants for out-of-state bars) protection similar to that which the state provided through its insurance company regulations for customers of in-state companies. Insurance is, of course, an industry traditionally highly regulated by the state.

In contrast, while admission to the Louisiana bar is quite rightly an important subject of regulation for Louisiana, admission to the California bar is not. Problems with admission to the California bar simply do not have the same effect on Louisianans as insurance fraud by out-of-state companies could on Californians.

On the other hand, California clearly has a vital interest in this suit, because admission to a state's bar is an important subject of state regulation. Also, it seems more likely (although we reserve decision) that California law will govern the tort and contract claims than that Louisiana law will.

We also find it difficult to characterize the Bar's relationship to Louisiana as one of "purposeful[ ] avail[ment] . . . of the privilege of conducting activities within the forum State . . . ." *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239. The fact that the Bar permits Louisianans to apply for or retain membership does not appear to be equivalent to the commercial activities relied on in *International Shoe* and *McGee.* The benefits conferred on the Bar by so doing are not very great. The Bar does not go into Louisiana to seek new members; all its contacts with Louisiana are initiated by Louisianans. This bears more of a resemblance to the activities in *Hanson* (Delaware trustee merely received instructions from settlor who had moved to Florida; Florida had no personal jurisdiction over trustee) and *Kulko* (father, a New York resident with custody, permitted daughter to live with mother in California; California had no personal jurisdiction over father) than in those *McGee* (solicitation of insurance contract; personal jurisdiction over insurer) or *International Shoe* (salesmen soliciting orders; personal jurisdiction over seller).

The only aspect of the case strongly supporting personal jurisdiction is that the burden on Burstein of maintaining suit in California is presumably greater than that on the Bar of defending in Louisiana, because she is an individual and may not be as financially able to bear the costs of litigating in a distant forum. In the first place, however, this is speculation; in the second, it is outweighed by all the other considerations pointing away from a Louisiana forum.

Finally, Burstein wishes us to consider an additional factor: she claims that the Bar so permeates the courts in California that she cannot get a fair trial of her claims in

any court there, state or federal. We decline to accept so generalized and undocumented an accusation of bias, or to give it any weight in our determination.

### D. Summary.

We find that the alleged actions of the Bar complained of in this suit, in and of themselves, have insufficient relation to Louisiana to support the personal jurisdiction of a Louisiana state court. An analysis of the overall fairness of maintaining the suit in Louisiana, taking into account the nature and substantiality of the Bar's relationship to Louisiana, the burden on the Bar of litigating in Louisiana, the location of the likely witnesses and the source of the state law most likely to be applied, and the interests of Louisiana and the plaintiff in having a Louisiana forum, leads us to the conclusion that allowing this suit to proceed in the district court in Louisiana would offend "traditional notions of fair play and substantial justice." *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* —— U.S. ——, ——, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). It follows that, under the second sentence of rule 4(e), the district court in this case lacked personal jurisdiction over the defendant Bar.[16]

### III. DENIAL OF DISCOVERY.

Burstein maintains that the district court erred in ruling on personal jurisdiction without allowing her full discovery of the jurisdictional facts. Her specific complaint is that the Bar only answered four out of a set of eight interrogatories, and the district court refused to compel answers to the other four. The unanswered interrogatories, however, clearly related only to the merits of Burstein's claim; the answers could have revealed no further facts on which to base personal jurisdiction.[17] It was thus not error for the district court to rule on personal jurisdiction without compelling replies.

### IV. CONCLUSION.

We find that, since the federal statutes under which the claim in this case is made, sections 1983 and 1343, do not authorize service of process, the second sentence of rule 4(e) requires that we find amenability to personal jurisdiction only "under the circumstances" in which a Louisiana court could. The defendant Bar's relationship with Louisiana is such that the maintenance of this suit in a Louisiana court would offend "traditional notions of fair play and substantial justice"; the fourteenth amendment due process clause would thus prevent a Louisiana court from exercising personal jurisdiction over the Bar. As a federal court in a federal question case, the district court was not constitutionally bound by the fourteenth amendment, but under rule 4(e) it was statutorily bound. Thus the district court correctly held that it lacked personal jurisdiction. This result makes it unnecessary to determine whether the exercise of personal jurisdiction in this case would have violated the due process clause of the fifth amendment, which does of course apply to federal courts.

---

**16.** We stress that our holding is a statutory one. The analysis of the statute, rule 4(e), requires us to apply the fourteenth amendment restrictions on state-court jurisdiction to this case. Absent the statute, however, the only relevant constitutional provision would have been the due process clause of the fifth amendment, since this case involves a federal claim in federal court.

**17.** The unanswered interrogatories were:
(1) For the past ten years, what per cent of all applicants failed the Multistate Examination but passed the California Bar Examination as a whole?

(2) For the past ten years, what per cent of all examinations were reread by reappraisers? How many of this number passed on reappraisal?

(3) Please send plaintiff's Multistate Bar Examination test sheets with a scoring key and anything else necessary for a court-appointed person to recheck the multiple choice scoring.

(4) What per cent of all applicants passed the California Bar Examination each time it was given during the last decade?

The district court did not err in denying additional discovery, since the information sought did not relate to the issue of personal jurisdiction. The court correctly declined to rule on any of Burstein's further contentions once it found it had no personal jurisdiction.

We find that none of Burstein's contentions have merit. The judgment of the district court dismissing the suit for lack of personal jurisdiction over the Bar is therefore

AFFIRMED.