795 F.2d 415
 55 USLW 2100, Fed. Sec. L. Rep. P 92,858
 POINT LANDING, INC. and Point Landing Fuel Corp.,
Plaintiffs-Appellants,
v.
OMNI CAPITAL INTERNATIONAL, LTD., et al., Defendants-Third
Party Plaintiffs- Appellants-Appellees,
v.
RUDOLF WOLFF & CO., LTD., Defendant-Third Party Defendant-Appellee,
and
James Gourlay, Third Party Defendant-Appellee.
William S. SMITH, Jr., and Ruby M. Smith, Plaintiffs,
v.
OMNI CAPITAL INTERNATIONAL, LTD., et al., Defendants-Third
Party Plaintiffs- Appellants,
v.
RUDOLF WOLFF & CO., LTD. and James Gourlay, Third Party
Defendants-Appellees.
Frank J. GEORGE and Brenda A. George, Plaintiffs,
v.
OMNI CAPITAL INTERNATIONAL, LTD., et al., Defendants-Third
Party Plaintiffs- Appellants,
v.
RUDOLF WOLFF & CO., LTD. and James Gourlay, Third Party
Defendants-Appellees.
Dennis M. ROSENBERG and Joan Rosenberg, Plaintiffs,
v.
OMNI CAPITAL INTERNATIONAL, LTD., et al., Defendants-Third
Party Plaintiffs- Appellants,
v.
RUDOLF WOLFF & CO., LTD. and James Gourlay, Third Party
Defendants-Appellees.
 No. 84-3445.
 United States Court of Appeals,
Fifth Circuit.
 July 25, 1986.
As Corrected Aug. 8, 1986.
 
 Robert A. Kutcher, New Orleans, La., for Omni, Friedburg, Stern and northglen.
 Anita M. Warner, New Orleans, La., for Point Landing.
 Elliot Paskoff, Townley & Updike, New York City, Dando B. Cellini, New Orleans, La., for Rudolf Wolff Co. Ltd.
 Sheldon H. Elsen, Lawrence M. Solan, New York City, Michael S. Fawer, Marie O. Ricco, New Orleans, La., for Gourlay.
 Robert B. Bieck, Jr., New Orleans, La., for Barry Minsky.
 Leslie E. Smith, Atty., S.E.C., Rosalind C. Cohen, Washington, D.C., for amicus Securities and Exchange Comm.
 H. Lowell Brown, Whitney Adams, Kenneth M. Raisler, Commodity Futures Trading Com'n, Washington, D.C., for amicus Commodity Futures Trading Comm.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before CLARK, Chief Judge, and WISDOM, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, HILL and JONES, Circuit Judges.*
 PER CURIAM:
 
 
 1
 This appeal presents two important issues. First, does the Commodity Exchange Act ("CEA") provide an exclusive cause of action arising out of the commodities futures transactions the plaintiffs engaged in here, preempting claims under federal securities laws? Our answer must be "Yes". The second question arises because of the absence of any provision in the CEA for nationwide service of process such as that which is explicitly stated in the Securities Exchange Act of 1934 ("1934 Act"). In this federal question case must personal jurisdiction[1] be obtained in accordance with Federal Rule of Civil Procedure 4(e), by applying the long-arm statute of the state in which the district court sits? Or, may a defendant's contacts throughout the country be aggregated to permit jurisdiction to be asserted over a defendant who could not be reached by the state's long-arm statute? The district court applied Rule 4(e) and dismissed the claims against two of the defendants for lack of personal jurisdiction. We affirm the judgment of the district court.
 
 I.
 
 2
 The plaintiffs in these four consolidated actions are two Louisiana corporations, Point Landing, Inc. and Point Landing Fuel Corporation (collectively referred to as "Point Landing"), and individual investors William and Ruby Smith ("Smith"), Frank and Brenda George ("George"), and Dennis and Joan Rosenberg ("Rosenberg"). In the Point Landing action the defendants are: two New York corporations, Omni Capital International, Ltd. and Omni Capital Corporation (collectively referred to as "Omni"); their broker, Rudolf Wolff & Co. Ltd. ("Wolff"), a British corporation; and certain officers or employees of Omni, Richard Friedburg, Michael Stern, and Barry Minsky. Omni impleaded James Gourlay, Wolff's representative, and Main, Hurdman, an accounting firm. In the Smith, George, and Rosenberg suits, the defendants are Omni, Northglen Capital Corporation ("Northglen"), Richard Friedburg, Michael Stern, Barry Minsky, and Competex, S.A., a now defunct Swiss company that has not appeared in the case. In the Smith and George suits, Omni and Northglen filed third-party complaints against Wolff, Gourlay and Main Hurdman. Wolff had no relationship with Smith, George, or Rosenberg and is not a defendant in their actions.[2]
 
 
 3
 The complaint alleges that the defendants, by making misrepresentations concerning their "investment program", fraudulently induced the plaintiffs to invest in silver straddle[3] commodity futures traded on the London Metals Exchange through discretionary trading accounts. Wolff and Competex handled these trades. Earlier, Wolff had approached Omni in New York to solicit Omni's business through Gourlay, a former director who acted as an agent for Wolff. Wolff billed Omni over 105,000 British pounds for commissions, part of which went to Gourlay.
 
 
 4
 The plaintiffs contend that Omni had meetings and did extensive advertising in which Omni represented that participation in its investment program would entitle the investors to federal income tax deductions on losses incurred, in addition to future profits. Unfortunately for the investors, the Internal Revenue Service disallowed the plaintiffs' deductions on the ground that the trades in London were not "bona fide, arm's length" transactions. The IRS concluded that the London Metals Exchange is not a public market and that its members were setting prices. All parties agree that the transactions involved "commodities" for purposes of federal law; plaintiffs allege, but Omni denies, that these were also "securities".
 
 
 5
 The original complaints allege violations of Sec. 17(a) of the Securities Act of 1933, 15 U.S.C. Sec. 77q(a), Secs. 10b and 20 of the Securities Exchange Act of 1934, 15 U.S.C. Secs. 78j, 78t, Rule 10b-5, 17 C.F.R. Sec. 240.10b-5, and the Louisiana Blue Sky law. The district court dismissed the plaintiffs' claims under the 1933 Act and under Sec. 20 of the 1934 Act. The plaintiffs do not appeal from those dismissals.
 
 
 6
 In Rivers v. Rosenthal & Co., 5 Cir.1980, 634 F.2d 774, vacated, 1982, 456 U.S. 968, 102 S.Ct. 2228, 72 L.Ed.2d 841, this Court held that the CEA affords no implied private right of action. The plaintiffs' original complaints therefore allege no violations of federal commodities law. While these actions were pending, the Supreme Court recognized an implied private right of action under the CEA and vacated our judgment in Rivers. Merrill Lynch, Pierce, Fenner & Smith v. Curran, 1982, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182. In the light of Curran, the plaintiffs amended their complaints to allege violations of Secs. 4b and 9(b) of the CEA, 7 U.S.C. Secs. 6b, 13(b).[4]
 
 
 7
 Wolff and Gourlay contest the court's jurisdiction over their persons. The district court initially considered the defendants' contacts with the United States as a whole and found that the aggregate contacts were sufficient to subject both parties to the court's jurisdiction.
 
 
 8
 Shortly thereafter this Court issued its opinion in DeMelo v. Toche Marine, Inc., 5th Cir.1983, 711 F.2d 1260. In DeMelo the question was: "[W]hat standard of amenability [to personal jurisdiction] should apply when the plaintiff's claims are founded in part upon federal question jurisdiction, but service is effected under a state long-arm statute?" 711 F.2d at 1265. The Court noted that the two most recent Fifth Circuit cases on this point, Lapeyrouse v. Texaco, 5 Cir.1982, 693 F.2d 581, and Burstein v. State Bar of California, 5 Cir.1982, 693 F.2d 511, "decided only three days apart, give different answers".[5] 711 F.2d at 1265. Writing for the DeMelo Court, Judge Gee chose to follow Burstein, holding that "when a federal question case is based upon a federal statute that is silent as to service of process, and a state long-arm statute is therefore utilized to serve an out-of-state defendant, Rule 4(e) requires that the state's standard of amenability to jurisdiction apply". Id. at 1266.
 
 
 9
 Wolff and Gourlay, relying on DeMelo, then renewed their objections to the court's personal jurisdiction. The district court held that: (1) the CEA preempts private actions under Sec. 10(b) of the 1934 Act and Rule 10b-5; (2) the CEA does not expressly or impliedly authorize nationwide service of process in private actions; (3) DeMelo requires an application of the Louisiana long-arm statute in private actions under the CEA; and (4) neither Wolff nor Gourlay is subject to the jurisdiction of Louisiana state courts. The court therefore dismissed the claims against Wolff and Gourlay for lack of personal jurisdiction. Because our opinions on the issue of personal jurisdiction in federal question cases, "[l]ike a Tower of Babel ... spoke in irreconciliable voices", DeMelo, 711 F.2d at 1268, the Court decided to hear this appeal en banc without an opinion by the panel to which the consolidated appeals were assigned.
 
 
 10
 We agree with the district court. The plaintiffs can recover, if at all, only under the CEA. Absent a rule or statute to the contrary, Federal Rule of Civil Procedure 4(e) permits a federal court to exercise jurisdiction over only those defendants who are subject to the jurisdiction of courts of the state in which the court sits. Because the plaintiffs do not challenge the district court's findings that Wolff and Gourlay are not subject to the jurisdiction of Louisiana state courts under that state's long-arm statute, we affirm the dismissal of all claims against Wolff and Gourlay.
 
 II.
 
 11
 We would not need to decide the question of amenability to personal jurisdiction by service under the Louisiana long-arm statute, if the commodity trades here were governed by the securities laws. Wolff and Gourlay would then be subject to the court's jurisdiction under Sec. 27 of the 1934 Act, which permits service of process "wherever the defendant may be found". 15 U.S.C. Sec. 78aa. Federal courts may exercise personal jurisdiction under Sec. 27 of the 1934 Act to the limits of due process. Leasco Data Processing Equipment Corp. v. Maxwell, 2 Cir.1972, 468 F.2d 1326, 1340 (Friendly, J.).
 
 A.
 
 12
 Until 1974 the CEA applied only to transactions in certain agricultural commodities. See 7 U.S.C. Sec. 2 (1970). Courts disagreed over which commodities transactions were covered by the securities statutes, and some transactions fell into a gap between federal securities and commodities laws.
 
 
 13
 The Commodity Futures Trading Commission Act of 1974 ("CFTA"), Pub.L. No. 93-463, 88 Stat. 1389, "the first complete overhaul of the Commodity Exchange Act since its inception", provides a "comprehensive regulatory structure". H.R.Rep. No. 975, 93d Cong., 2d Sess. 1. Congress intended the 1974 amendments to "fill all regulatory gaps" while "avoid[ing] unnecessary, overlapping and duplicative regulation." 120 Cong.Rec. H34736 (Oct. 9, 1974) (remarks of House Agriculture Committee Chairman Robert Poage); 120 Cong.Rec. S34997 (Oct. 10, 1974) (remarks of Senate Agriculture Committee Chairman Herman Talmadge).
 
 
 14
 Section 2(a)(1)(A), set out in the margin, is the critical provision of the CFTA.[6] The statute confers on the Commodities Futures Trading Commission ("CFTC") exclusive jurisdiction over "accounts ... involving contract of sale of a commodity for future delivery traded or executed on a contract market designated pursuant to Sec. 7 of this title or any other board of trade, exchange, or market". The London Metals Exchange, although not a designated exchange, is a "board of trade, exchange, or market" within the meaning of Sec. 2. This Court has held that the CFTC has regulatory authority over trading in "London options". CFTC v. Miller, 5 Cir.1978, 570 F.2d 1296, 1299.
 
 
 15
 The legislative history of Sec. 2 indicates that the CFTC has exclusive jurisdiction over the transactions at issue. Representative Poage, Chairman of the House Agriculture Committee, remarked from the House floor:
 
 
 16
 I wish to emphasize that the words "any other board of trade, exchange or market" were included ... only for the purpose of giving the Commodity Futures Trading Commission jurisdiction over future contracts purchased and sold in the United States and executed on a foreign board of trade, exchange, or market. This grant of exclusive jurisdiction is not to be construed as preempting the jurisdiction of the Securities and Exchange Commission over securities ... traded on any national securities exchange or any other U.S. securities market.
 
 
 17
 120 Cong.Rec. H34, 737 (1974). The Supreme Court has concluded that Section 2 gives the CFTC "exclusive jurisdiction over commodity futures trading. The purpose of the exclusive-jurisdiction provision in the bill passed by the House was to separate the functions of the Commission from those of the Securities and Exchange Commission and other regulatory agencies." Curran, 456 U.S. at 386, 102 S.Ct. at 1843. See also Markham, Regulation of International Transactions Under the Commodity Exchange Act, 48 Fordham L.Rev. 129, 133 (1979).
 
 
 18
 Point Landing argues that the SEC retained jurisdiction over the transactions under the saving clause of Sec. 2:
 
 
 19
 [E]xcept as hereinabove provided, nothing contained in this section shall (i) supersede or limit the jurisdiction at any time conferred on the Securities and Exchange Commission or other regulatory authorities under the laws of the United States or of any State, or (ii) restrict the Securities and Exchange Commission and such other authorities from carrying out their duties and responsibilities in accordance with such laws.
 
 
 20
 As originally passed in the House, the bill provided that "nothing herein contained shall supersede or limit the jurisdiction at any time conferred on the Securities Exchange Commission". H.R. 1131, 93d Cong., 2d Sess. Sec. 201 (1974), U.S.Code Cong. & Admin.News 1974, p. 5843.[7] The Senate added the phrase "except as hereinabove provided" to ensure that "the [CFTC's exclusive] jurisdiction, where applicable, supersedes state as well as federal agencies". S.Rep. No. 1131, 93d Cong. 2d Sess. 6 (1974), U.S.Code Cong. & Admin.News 1974, p. 5848. The Senate version was adopted by the Conference Committee and enacted into law. According to the Conference Report, Sec. 2(a)(1)(A) "preempt[s] the field insofar as futures regulation is concerned". H.Conf.Rep. No. 1383, 93d Cong. 2d Sess. (1974).
 
 
 21
 Congress has not altered the CFTC's jurisdiction over discretionary commodity accounts since 1974. The Senate Agriculture Committee has reported that "[t]he basic conclusion reached in 1974 that there should be a single regulatory agency responsible for futures trading is as valid now as it was then". S.Rep. No. 850, 95th Cong. 2d Sess. 22 (1978), U.S.Code Cong. & Admin.News 1978, pp. 2087, 2110. A report accompanying the House version of the 1982 amendments to the CEA explained that "the [CFTC] would continue to have exclusive jurisdiction over foreign futures transactions traded in the United States". H.R.Rep. No. 97-565(I), 97th Cong. 2d Sess. (1982), U.S.Code Cong. & Admin.News 1982, pp. 3871, 3953.
 
 B.
 
 22
 The plaintiffs contend that even if the SEC lacks jurisdiction to regulate the transactions at issue, the courts may grant relief based on securities laws and regulations. Courts faced with this question have reached three different results.
 
 
 23
 (1) Some courts and commentators, many but not all writing before 1982, adopt the plaintiffs' position. Peavey Co. v. Mitchell, W.D.Okla., 1983 [1983-84] Fed.Sec.L.Rep. (CCH) p 99, 593; Mullis v. Merrill Lynch, Pierce, Fenner & Smith, Inc., D.Nev.1980, 492 F.Supp. 1345; Bromberg, Commodities Law and Securities Law--Overlaps and Preemptions, 1 J Corp.L. 217, 310 (1976); Note, The Continued Availability of Private Actions for Fraud Under the Securities Statutes in Commodity-Security Transactions, 22 B.C.L.Rev. 335 (1981). The Court of Appeals for the Ninth Circuit has approved this result in dictum. Mordaunt v. Incomco, 9 Cir.1982, 686 F.2d 815, cert. denied, --- U.S. ----, 105 S.Ct. 801, 83 L.Ed.2d 793 (1985). Mordaunt cites the Supreme Court's Curran opinion as authority for the proposition that the CEA does not preempt private actions under the securities laws. 686 F.2d at 816. The Curran opinion, however, does not address the preemption of private securities actions. The Court found that an implied right of action under the CEA survived the 1974 amendments. Because the 1974 amendments dramatically expanded the scope of the commodities laws to avoid "overlapping and duplicative" coverage, it appears to us that Curran does not support the proposition for which it is cited in Mordaunt. See T. Russo, Regulation of the Commodities, Futures, and Options Markets Sec. 10.20, at 10-54 (1983).
 
 
 24
 (2) Other courts, including the district court in this case, have concluded that plaintiffs may recover under "self-executing" sections of the securities acts but not under Sec. 10(b) of the 1934 Act or under other sections that proscribe activities contravening SEC regulations. American Grain Assoc. v. Canfield, Burch & Mancuso, W.D.La.1982, 530 F.Supp. 1339; Westlake v. Abrams, N.D.Ga.1980, 504 F.Supp. 337, 345.
 
 
 25
 (3) Still other courts hold that plaintiffs may not recover under any securities statute or regulation. Mallen v. Merrill Lynch, Pierce, Fenner & Smith, Inc., N.D.Ga.1985, 605 F.Supp. 1105, 1114; Bartels v. International Commodities Corp., D.Conn.1977, 435 F.Supp. 865, 869; Fairchild, Arabatzis & Smith, Inc. v. Prometco Co., S.D.N.Y.1979, 470 F.Supp. 610, 614.
 
 
 26
 We hold that the CEA affords plaintiffs their exclusive remedy.[8] Any other result would frustrate the intent of Congress to preempt the field insofar as futures regulation is concerned. Congress intended the 1974 amendments to create a uniform regulatory scheme. Private actions under the securities laws might engraft policies and standards inconsistent with those developed under the CEA. We find, moreover, no reason to rely on securities laws when the CEA now affords a full range of remedies, including an express private right of action. See T.Russo, Sec. 10.20, at 10-58 to 59.
 
 
 27
 The securities acts contain broad and flexible concepts such as "manipulative acts and practices" and "just and equitable principles of trade". 15 U.S.C. Sec. 78f-(b)5. The CEA permits the CFTC to designate a contract market in a particular commodity only if the new futures contract "will not be contrary to the public interest". 7 U.S.C. Sec. 7(g).
 
 
 28
 These fluid concepts not only require the continual exercise of judgment and discretion, but, to provide effective regulation, they must be administered on a relatively consistent and uniform basis. It is reasonable to assume that Congress, having created a regulatory agency under the same statute, intends for that agency to exercise the requisite judgment and to provide the needed uniformity.... Conversely, once Congress has directed the agency not to formulate regulatory policy with respect to a particular activity ... no public benefit can be discerned from allowing private actions for private gain, which may evolve new policies or standards at variance with the congressional intent, under the preempted agency's governing statute.
 
 
 29
 Johnson, The Commodity Futures Trading Commission Act: Preemption as Public Policy, 29 Vand.L.Rev. 35-36 (1976).
 
 
 30
 The plaintiffs appeal only the dismissal of their claim under Sec. 10(b) of the 1934 Act. We have, therefore, no occasion to hold that the CEA also preempts actions under "self-executing" sections of the securities acts.
 
 III.
 
 31
 On first considering the subject of the amenability of an out-of-state defendant, especially an alien defendant, to the personal jurisdiction of a federal court hearing a federal question case, one's natural reaction does not necessarily coincide with the conclusions one may be forced to reach in the light of the decided cases and commentary. It may seem anomalous to tie personal jurisdiction in a federal question case to the long-arm statute of the state in which the federal court sits. In a diversity case where the plaintiff asserts a local claim, a federal court using a state long-arm statute, as required by Rule 4(e), is bound by the limits of the fourteenth amendment. The court must make certain that the forum state does not unduly encroach on the interests of a sister state or of the nation. In a federal question case, however, where a federal court is adjudicating a federal claim involving a federal statute, concern for limiting the reach of a state is irrelevant. The court determines rights and liabilities under a uniform, national law. If fairness or due process is an issue, it is the due process standard of the fifth amendment, not the fourteenth amendment, that must be met. A heavy weight of authority, however, accepts the anomaly. See Note, National Contacts as a Basis for In Personam Jurisdiction over Aliens in Federal Question Cases, 70 Calif.L.Rev. 686 (1982).
 
 A.
 
 32
 To start at the logical beginning, the unmalleable principle of law that is unyielding to legal blandishments is that federal courts may exercise only so much of their Article III jurisdiction as they are granted by Congress. They must ground their personal jurisdiction on a federal statute or rule. "As courts of limited jurisdiction, the federal courts possess no warrant to create jurisdictional law of their own." Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 1982, 456 U.S. 694, 711, 102 S.Ct. 2099, 2109, 72 L.Ed.2d 492 (Powell, J., concurring). See also Burstein, 693 F.2d at 514; Rebozo v. Washington Post Co., 5 Cir.1975, 515 F.2d 1208, 1211; Wells Fargo & Co. v. Wells Fargo Express Co., 9 Cir.1977, 556 F.2d 406, 414 (collecting authorities).
 
 
 33
 In rare instances there are gaps in the law enabling a federal court to fashion federal common law. We decline to do so here because of the nature of personal jurisdiction. That federal courts should determine their own personal jurisdiction is a proposition fundamentally at odds with our government of separated powers. The Supreme Court typically has approved the creation of federal common law only when there is some basis for the conclusion that Congress would have adopted the rule fashioned by the courts if it had considered the matter, or at least that Congress would have left the choice to the courts. See, e.g., United States v. Little Lake Misere Land Co., 1973, 412 U.S. 580, 93 S.Ct. 2389, 37 L.Ed.2d 187; Clearfield Trust Co. v. United States, 1943, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838; see generally M. Redish, Federal Jurisdiction: Tensions in the Allocation of Judicial Power 79-107 (1980); Friendly, In Praise of Erie--And of the New Federal Common Law, 39 N.Y.U.L.Rev. 383 (1964). We find no basis for either conclusion in this case.
 
 B.
 
 34
 The 1974 amendments to the CEA provide for actions (1) by the CFTC (formerly the Commodities Exchange Commission), (2) by state attorneys general, and (3) by private parties seeking to enforce a CFTC ruling in their favor. 7 U.S.C. Secs. 13a-1, 13a-2, 18(d). To make these actions effective, the sections referred to expressly provide for nationwide service of process. In 1982 Congress provided for private actions under the CEA, 7 U.S.C. Sec. 25, but was silent as to service of process. Point Landing argues that Congress intended to allow nationwide service of process in private actions because it did so in the other types of actions authorized under the CEA. There is no basis for this argument. On the contrary, the clear language of Secs. 13a-1, 13a-2 and 18(d) demonstrates that Congress knows how to provide for nationwide service of process. The more likely inference to draw from the congressional silence is that Congress omitted that language from Sec. 25 because it did not intend to permit nationwide service of process. Even though private actions are a "significant enforcement tool", Curran, 456 U.S. at 394, 102 S.Ct. at 1847, there is a rational governmental basis for limiting service of process in private suits while giving wide powers to those government regulatory bodies charged with primary responsibility for developing and enforcing regulatory policy. Indeed, a House Committee reported that it looks to vigorous enforcement by the CFTC, "so it does not become necessary to rely on private litigants as a policeman of the Commodities Exchange Act". H.R.Rep. No. 97-565(I) at 57, U.S.Code Cong. & Admin.News 1982, at 3906.
 
 
 35
 Since the CEA is silent on the subject of process, authority for service and personal jurisdiction must be found in the Rules.
 
 C.
 
 36
 Professor Moore comments on the general rules provision governing service of process and personal jurisdiction:
 
 
 37
 No court has unlimited authority to issue original process. In regard to state courts, the basic limitation on service of original process is the notion that a state may only exercise jurisdiction over a res that is within its borders or over a person who has been personally served within the state, or who has had sufficient contact with the state so that in personam service may be made beyond its borders consistent with due process.
 
 
 38
 Similarly, the federal district courts may only issue process for service within the territorial limits validly authorized by a federal statute or the Federal Rules.
 
 
 39
 2 J. Moore, J. Lucas, H. Fink & C. Thompson, Moore's Federal Practice p 4.02 at 4-45 to 46 (footnotes omitted).
 
 
 40
 "Jurisdiction over the person generally is dealt with by Rule 4, governing the methods of service through which personal jurisdiction may be obtained." Insurance Corp. of Ireland, 456 U.S. at 715 n. 6, 102 S.Ct. at 2111 n. 6 (Powell, J., concurring). Rule 4 therefore has been characterized as a "jurisdictional provision." (Statement by Mr. Justice Black and Mr. Justice Douglas, 1963, 374 U.S. 865, 869, dissenting from adoption of amendments to the Federal Rules of Civil Procedure).
 
 Rule 4(f) provides in part:
 
 41
 (f) Territorial Limits of Effective Service. All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state.
 
 Rule 4(e) provides:
 
 42
 (e) Summons: Service Upon Party Not Inhabitant of or Found Within State. Whenever a statute of the United States or an order of court thereunder provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, or (2) for service upon or notice to him to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state, service may in either case be made under the circumstances and in the manner prescribed in the statute or rule. (emphasis added)
 
 
 43
 Rule 4(e) therefore permits service "under the circumstances ... prescribed" by a statute or rule of the state in which the district court sits. (No question is raised here by the parties as to the "manner" of service.) The critical phrase "under the circumstances" was added to the rule in 1963. This occurred several years after our decision in Lone Star Package Car Co. v. Baltimore & Ohio Railroad, 5 Cir.1954, 212 F.2d 147.
 
 
 44
 In Lone Star this Court made the broad statement that whether the state long-arm statute asserts jurisdiction over a defendant sought to be joined in suit is irrelevant "where the power of the federal court ... can be independently sustained ... on the ground that the matter in controversy arises under the Constitution, laws or treaties of the United States". 212 F.2d at 153-54. See also Terry v. Raymond International, Inc., 5 Cir.1981, 658 F.2d 398, 401, cert. denied, 1982, 456 U.S. 928, 102 S.Ct. 1975, 72 L.Ed.2d 443, in which this Court declared that in a federal question case the "contours of amenability ... are more fluid".[9]
 
 
 45
 In Lapeyrouse v. Texaco, Inc., 5 Cir.1982, 693 F.2d 581, Judge Williams, for the Court, citing Lone Star and Terry, found that the "sole test for amenability" to personal jurisdiction in a federal question case is the due process clause of the fifth amendment.[10] The opinion states:
 
 
 46
 [T]he Supreme Court's consideration of various factors as relevant to a determination of the fairness of exerting jurisdiction take on new meaning in the context of a federal forum interpreting its own laws. Thus, while we are aided by the constructions provided the due process clause under the Fourteenth Amendment in determining whether in personam jurisdiction may be asserted, we must give weight to the differences occasioned by the federal nature of both the forum and claim in determining whether the due process clause of the Fifth Amendment permits exercise of in personam jurisdiction in this case.
 
 
 47
 693 F.2d at 586 (footnote omitted).
 
 
 48
 In Burstein v. State Bar of California, 5 Cir.1982, 693 F.2d 511, in a thorough and perceptive analysis of Rule 4(e), Judge Randall, for the Court, concluded:
 
 
 49
 While by its terms rule 4(d) might well apply to this case, it is clear that rule 4(e) is designed for use to obtain service on parties not resident within the forum state, and by negative implication it excludes rule 4(d) ....
 
 
 50
 ....
 
 
 51
 ... The clear import of the "under the circumstances" language, at least where the assertion of jurisdiction and not just the service of process depends on the state statute, is that a federal court, even in a federal question case, can use a state long-arm statute only to reach those parties whom a court of the state court could also reach under it.
 
 
 52
 693 F.2d at 514 (citations omitted).
 
 
 53
 The opinion quotes Professors Wright and Miller:
 
 
 54
 On balance, then, it would seem that state law always should govern amenability when a state statute is used pursuant to Rule 4(e). Although the opposite result has some appeal in that it permits effectuation of federal interests in a broader range of suits, it is inconsistent with the apparent intent of the draftsmen of Rule 4(e) to use state provisions for service in order to permit the federal courts in a state to hear those cases that could be brought in the state's own courts when a basis for asserting federal subject matter jurisdiction exists.[11]
 
 
 55
 4 C. Wright & A. Miller, Federal Practice & Procedure, Sec. 1075, at 313 (1969).
 
 
 56
 Judge Randall took pains to point out that Lone Star involved a diversity claim and in-state service. It therefore comes within Rule 4(d)(7) rather than Rule 4(e). Rule 4(d)(7) requires service only "in the manner prescribed by the law of the state in which the district court is held"; it does not have the "under the circumstances" language of Rule 4(e).
 
 
 57
 In DeMelo v. Toche Marine, Inc., 5 Cir.1983, 711 F.2d 1260, the Court was confronted with the dilemma of choosing between Burstein or Lapeyrouse. Judge Gee, for the Court, "look[ed] to the Rule" and decided that the Burstein "exposition ... is the more sound". 711 F.2d at 1266. "Lone Star was decided in 1954, long before the 1963 amendments to Rule 4 added the second sentence to Rule 4(e).... Terry discussed neither the 1963 amendments to Rule 4 nor any of the intervening federal question cases that had applied a state standard of amenability.... [R]elying solely upon the broad language in Lone Star, Terry applied a federal standard, treating the reach of the state long-arm statute as 'irrelevant' ." 711 F.2d at 1268-69.
 
 
 58
 Most courts agree that Rule 4(e) incorporates the forum state's long-arm statute when the federal statute sued under does not authorize nationwide service of process. In Max Daetwyler Corp. v. R. Meyer, 3 Cir.1985, 762 F.2d 290, cert. denied, --- U.S. ----, 106 S.Ct. 383, 88 L.Ed.2d 336, the court recently addressed the issue before this Court: amenability to jurisdiction of an alien defendant in a federal question action when the defendant's contacts with the United States as a whole were sufficient to satisfy due process, but contacts with the forum state were insufficient. The court, per Garth, J., held that "in the absence of a governing federal statute providing for nationwide service of process, in personam jurisdiction may not rest upon an alien's aggregated national contacts," and the long-arm statute of the forum state must be applied. Id. at 291. The court declined the plaintiff's suggestion that it adopt a "national contacts theory," which asserts that "the proper inquiry in determining personal jurisdiction in a case involving federal rights is one directed to the totality of a defendant's contacts throughout the United States." Id. at 293. The court noted that, although the national contacts theory might be constitutionally valid, Rule 4(e) was a limitation on the court's power. It interpreted Rule 4(e) as adopting "an incorporative approach requiring that both the assertion of [personal] jurisdiction and the service of process be gauged by state amenability standards". Id. at 295.
 
 
 59
 The court implied that if the national contacts theory is accepted, it in effect reads a nationwide service of process provision into all federal laws when an alien is a defendant. It recognized that although "the uniform administration of federal law might be enhanced were Congress to establish a general federal question competence statute, in the absence of such legislation, we are required to follow the incorporative provisions of Rule 4(e)". Id. at 296. The court stated that all but a "few" courts interpreted Rule 4(e) the same way. Id. at 297.
 
 
 60
 The court in Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty., Ltd., D.C.Cir.1981, 647 F.2d 200, concluded, in a trademark case, that in the absence of a federal statute authorizing nationwide service of process, under Rule 4(e) "we must look to the District of Columbia long-arm statute". Id. at 204. Wells Fargo & Co. v. Wells Fargo Express, 9 Cir.1977, 556 F.2d 406, 418, rejected the national contacts theory because the Lanham Act did not grant federal courts broad service of process powers. See also Johnson Creative Arts, Inc. v. Wool Masters, Inc., 1 Cir.1984, 743 F.2d 947, 950 (Federal Rules of Civil Procedure and other congressional mandates limit exercise of personal jurisdiction in federal question cases).
 
 
 61
 The Court of Appeals for the Sixth Circuit has concluded that "a federal district court considering a case that arises under federal law is not subject to precisely the same due process limitations which restrict its reach in diversity cases". Handley v. Indiana & Michigan Electric Co., 6 Cir.1984, 732 F.2d 1265, 1272. The Handley court invoked the Kentucky long-arm statute, but nevertheless asserted jurisdiction over a defendant not subject to the jurisdiction of the Kentucky courts. The court reasoned that, since the Kentucky statute extends jurisdiction to the limit of the fourteenth amendment, federal courts in federal question cases may extend jurisdiction to the limits of the fifth amendment. We find no warrant in the language or history of Rule 4(e) for this result.
 
 
 62
 In short, an "overwhelming majority of federal courts have held that, in the absence of specific provisions to the contrary, rule 4 adopts the state provisions on amenability to service and on manner of service". Note, Alien Corporations and Aggregate Contacts: A Genuinely Federal Jurisdictional Standard, 95 Harv.L.Rev. 470, 471 n. 6 (1981). Probably a majority of commentators agree that Rule 4(e) incorporates the forum state long-arm statute when the federal statute sued under does not provide for a nationwide service of process even though they may disagree with that conclusion as a matter of policy. Lilly, Jurisdiction over Domestic and Alien Defendants, 69 Va.L.Rev. 85 (1983); Von Mehren & Troutman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121, 1123 n. 6 (1966); Note, National Contacts as a Basis for In Personam Jurisdiction over Aliens in Federal Question Suits, 70 Calif.L.Rev. 686, 690 n. 24, 693 (1982) Note, Alien Corporations and Aggregate Contacts: A Genuinely Federal Jurisdictional Standard, 95 Harv.L.Rev. 470, 479-81 (1981); see generally Project, Obtaining Personal Jurisdiction Over Alien Corporations--A Survey of U.S. Practice, 9 Vand.J. Transnat'l L. 345 (1976).
 
 
 63
 There may be some appealing arguments for the notion of aggregating national contacts in federal cases where in any one forum there are not enough local contacts to justify use of a state long-arm statute for service of process and for personal jurisdiction to attach, although the aggregate of the national contacts are substantial. But we cannot blink the language of Rule 4(e). We cannot read the rule except as saying that absent specific congressional authority, a federal district court has no personal jurisdiction over a defendant who cannot be reached by the long-arm statute of the state in which the district court sits. Lapeyrouse and Terry are overruled to the extent that they differ from the views expressed in this opinion.
 
 
 64
 Neither Point Landing nor Omni disputes the court's findings that Wolff and Gourlay are not subject to the jurisdiction of the Louisiana courts under that state's long-arm statute.
 
 
 65
 The judgment of the district court is AFFIRMED. The case is remanded for further proceedings consistent with this opinion.
 
 
 66
 WISDOM, Circuit Judge, with whom Chief Judge CLARK, and Judges ALVIN B. RUBIN, POLITZ, JOHNSON, and JERRE S. WILLIAMS join, concurring in part and dissenting in part:
 
 
 67
 I respectfully dissent from Section III of the majority opinion. That section is an exercise in lawyering, not in judging. By focusing attention on the details of service of process, the majority lose sight of important questions of jurisdiction. In this federal question case, the effect of the majority's decision is to grant jurisdictional immunity to alien defendants who have done business in this country thereby destroying any real possibility of holding them accountable for their violation of federal statutes.[1] This immunity is granted in spite of the defendants' apparently extensive contacts throughout the country, because the defendants' contacts in Louisiana where the suit was filed, are so minimal that the state's long-arm statute cannot be used for service of process, under traditional International Shoe[2] principles.
 
 
 68
 I can understand that in a diversity case a federal court should be restricted in the use of a state long-arm statute to situations in which a defendant's state contacts are sufficient to meet the requirements of fairness under the due process clause of the fourteenth amendment. I cannot understand the rationale for imposing state legislative and territorial restraints on federal courts in a federal question case involving a national policy, such as that embodied in the Commodities Exchange Act, calling for national uniformity in enforcement.[3] The majority's conclusion does violence to the structure of the American polity. A federal court's service arm in a federal question case should not be handcuffed to the place of the court's seat.
 
 
 69
 Statutes and rules should be construed so as not to reach an irrational result. Here there is a bizarre hiatus in the Rules. There is no national long-arm service of process provision in the Commodities Exchange Act. And Rule 4 does not appear to provide for service of process on and personal jurisdiction over an alien corporation which may have numerous contacts with the nation but few contacts with either the forum state or with any other particular state. When there is a hiatus in the Federal Rules the district court may establish its own ad hoc rule, provided that it is fair and reasonable and not inconsistent with any of the express rules. In a federal question action, aggregating a defendant's national contacts is analogous to aggregating state contacts in a diversity case. Aggregation of national contacts is a fair and reasonable ad hoc solution to the problem. The basis for amenability to suit is the relationship between the defendant and the forum. In a diversity action in which a federal court sits as a state court, there is good reason to be guided by International Shoe. No such reason exists when the federal court sits as an integral part of our national system of courts responsive to federal law and federal objectives.
 
 I.
 
 70
 I start with Rule 1 of the Federal Rules of Civil Procedure:
 
 
 71
 [These rules] shall be construed to secure the just, speedy, and inexpensive determination of every action.
 
 
 72
 Here, the defendants' Louisiana connections are so tenuous as to be insubstantial for purposes of complying with the minimum contacts rule, as established in International Shoe and its progeny, and apparently the defendants' contacts are insubstantial with respect to any particular state, even New York. In the aggregate, however, the defendants' contacts with the country as a whole are substantial. The defendants do not suggest that they have substantial contacts elsewhere in the United States or that this forum is less convenient to them than some other forum in this country. The district court found the defendants subject to its jurisdiction,[4] until the defendants called the DeMelo[5] case to its attention.
 
 
 73
 The majority's construction of Rule 4 brings about the unjust, inconvenient, and expensive result of immunizing Wolff and Gourlay from liability, except for suit by the plaintiffs in Great Britain, and there is no likelihood that a British court would find liability for the violation of, or even understand, the technical federal statute here involved. I believe that there is an alternative construction of the Rules in keeping with the objectives of Rule 1, and that suit in a United States forum will give both sides fair consideration of the substantive issue.
 
 II.
 
 74
 Rules of procedure are just that, rules of procedure. They are not substantive. They are for efficient housekeeping. To assure that the rules would be limited to procedure, Congress provided that they must not "abridge, enlarge or modify any substantive right". 28 U.S.C. Sec. 2072. Rule 4 provides the mechanics for service of process. It has no necessary relation with a court's acquiring personal jurisdiction.
 
 Indeed Rule 82 provides in part:
 
 75
 These rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein.
 
 
 76
 In short, if there is personal jurisdiction, Rule 4 should not be construed as limiting the jurisdiction of the United States district courts. "With the adoption of the Federal Rules of Civil Procedure in 1938", Professor Marilyn J. Berger has written, "Congress finally attempted to provide a uniform standard for exercising personal jurisdiction in federal courts. Despite that attempt there is currently no uniform method for acquiring personal jurisdiction in federal question cases. A contributing factor to the lack of uniformity is Federal Rule of Civil Procedure 4.... Although the Rule describes the mechanism for service of process, it does not clarify the amenability basis [that is, the relationship between the defendant and the forum]".[6]
 
 
 77
 In short, if there is personal jurisdiction, Rule 4 should not be construed as limiting the jurisdiction of United States district courts.
 
 III.
 A. Rule 83 provides in part:
 
 78
 In all cases not provided for by rule, the district judges and magistrates may regulate their practice in any manner not inconsistent with these rules.
 
 
 79
 In Petrol Shipping Corp. v. Kingdom of Greece, Min. of Com.,[7] the Second Circuit did not shrink from approving a method of service to fit a situation not contemplated by the rules. The defendant was the Greek Ministry of Trade, State Purchase Directorate, and service of process was effected by ordinary mail addressed to that agency. The court concluded that the defendant was merely an agency of the Greek government. Acknowledging that "[n]either Rule 4(d)(3), nor any other part of Rule 4, provides for service on such a party",[8] the Court did not bow out of the case. Instead it fashioned a rule not inconsistent with Rule 4:
 
 
 80
 But the fact that Rule 4 does not provide a method for service on respondent does not mean that no service could be effective. Rule 83 permits "each district court, by action of a majority of the judges thereof" to "make and amend rules governing its practice not inconsistent with these rules." The Rule goes on to say, "in all cases not provided for by rule, the district court may regulate their practice in any manner not inconsistent with these rules." See also 28 U.S.C. Sec. 2071.
 
 
 81
 And when there is no Federal Rule, and no local rule, the court may fashion one not inconsistent with the Federal Rules. Rule 83, supra; see In re United Corp., 283 F.2d 593 (3d Cir.1960). There is no compelling reason why the court must fashion the rule in advance, although the better practice in a case such as this might be to secure an advance ruling, approving a given method of service.[9]
 
 
 82
 In re United Corp.,[10] cited in the Petrol Shipping opinion, arose in a different context, but it shows the lattitude extended to a district court in fashioning its own rule. The district court denied attorneys the right to file objections to allowance of fees and expenses for services rendered in the reorganization of a corporation, when the attorneys appeared and requested leave to file objections on the day of the hearing on that subject, fifteen days after the deadline fixed by the court for filing objections. No rule covered the situation. The Court of Appeals for the Third Circuit approved the district court's order:
 
 
 83
 A United States District Court, in all cases not provided for by the Federal Rules of Civil Procedure, 28 U.S.C., or by its local rules, may regulate the practice to be followed in proceedings properly before it in any manner not inconsistent with the Federal Rules of Civil Procedure or statute. See Rule 83, Fed.Rules of Civ.Proc. and Section 2071, Title 28 U.S.C. The manner and enforcement of such regulations rests in the court's sound discretion and will not be interfered with by an appellate tribunal in the absence of a showing of arbitrariness or fundamental unfairness.
 
 
 84
 283 F.2d at 596.
 
 
 85
 There is no federal rule and no local rule governing service of process on alien defendants or personal jurisdiction over alien defendants. The language of Rule 4(e) does not contain any suggestion that it provides the exclusive method for obtaining service and personal jurisdiction over an alien defendant. Indeed the first sentence of Rule 4(e) provides:
 
 
 86
 Whenever a statute of the United States or an order of the court thereunder provides for service of a summons, or notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. (Emphasis added.)
 
 
 87
 The permissive words "may be made" suggest that other methods are permissible. The unqualified words "in a manner stated in this rule" suggest that the method of service should be analogous to service under a state long-arm statute. The analogy here is between state and nation, between state contacts and national contacts, between the due process clause of the fourteenth amendment and the due process clause of the fifth amendment. Rule 4(e) should be read as silent on the point at issue or, at most, permitting a nonexclusive form of service on an alien or foreign defendant, when there are sufficient state contacts to justify use of the state long-arm statute.
 
 
 88
 Rules 82 and 83, considered with Rule 1, point to courts' not taking a scrivener's arid reading of the Federal Rules. The rules were adopted in 1938 to get away from rigid common law procedures. The growth of multinational corporations engaging in international commercial activities strongly argues for a flexible view of the personal jurisdiction of national courts when the defendant is an alien. The due process protection of the fifth amendment and the liberal transfer provision of the Rules will ensure an alien defendant a fair trial.
 
 
 89
 B. I summarize to this point. Rule 4 describes the mechanism for service of process. It says nothing about jurisdiction, because regardless of service, there must first be jurisdiction. But there is no reason for federal courts to be bound by a state test of jurisdiction. The state test is based on the due process clause of the fourteenth amendment: fairness demands that the defendant have substantial contacts with the state, as established in International Shoe and other decisions of the Supreme Court. International Shoe, as everyone knows, concerned the reach of a state law in a state court action. But the appropriate test for a federal question case is a federal test: Are the contacts with the country as a whole substantial enough to satisfy the due process clause of the fifth amendment?
 
 
 90
 No one denies that the district court had subject-matter jurisdiction, for the defendants allegedly violated a federal statute enbodying what was intended to be a uniform national policy on commodities exchanges. The defendants advertised in the Wall Street Journal, conducted a number of investor meetings in various states, and had many contacts with the country as a whole. No one pretends that in a civil suit in Great Britain the courts would look kindly on enforcement of the United States securities laws. It passes belief that Congress intended to provide aliens a sanctuary from liability because of a housekeeping rule for federal courts that was obviously not written with alien defendants in mind.
 
 IV.
 
 91
 In International Shoe the Supreme Court held that the "Fourteenth Amendment requires that the defendant's operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just ... to permit the state to enforce the obligations which [the defendant] has incurred there". 326 U.S. at 320, 66 S.Ct. at 160. As a result, "the overwhelming concensus among federal courts is to analyze questions of in personam jurisdiction over alien defendants by examining the relationship of the defendant, the litigation and the forum under traditional International Shoe principles." Superior Coal Co. v. Ruhrkohle A.G.[11] This fits nicely in a diversity case and allows for variations caused by diverse state statutes, whether the statute is narrow or broad. But it is not designed for federal question cases involving a congressional law that should be uniformly enforced.[12] In such cases a defendant could never be brought to trial or a trial could be held in an inappropriate location, because the defendant lacks the requisite contacts with the state in which the suit is filed.[13] "The result is the subjugation of the federal interest in enforcement of federal laws to state considerations that should be irrelevant."[14] Federal courts should "disregard" state law "provisions that are irrelevant in the federal context".[15]
 
 
 92
 Federal courts are common law courts. The genius of the common law has been its capacity for innovation and growth, its ability to fill those interstices in the law inadvertently left by legislative enactment. Nothing in the Rules suggests that the Supreme Court in adopting them intended to foreclose any other method of service that would satisfy the requirements of due process. The majority uses a gap in the procedural rules to work an injustice in the substantive result, failing to exercise the judicial power imparted to us by Article III of the Constitution and the court's common law power implicitly confirmed by the seventh amendment.
 
 
 93
 In Cryomedics, Inc. v. Spembly, Ltd.,[16] the District Judge Jon Newman, who is now on the Court of Appeals for the Second Circuit specifically considered the issue before this court without referring to Rule 4(e). Cryomedics, a Connecticut corporation, brought an action in federal court against an alien corporation for patent infringement. The alien corporation, Spembly, Ltd., filed a motion to dismiss based upon lack of personal jurisdiction. Judge Newman held:
 
 
 94
 [I]t is not necessary to decide whether Spembly's contacts with Connecticut are alone sufficient to satisfy the demands of the Constitution. When a federal court is asked to exercise personal jurisdiction over an alien defendant sued on a claim arising out of federal law, jurisdiction may appropriately be determined on the basis of the alien's aggregated contacts with the United States as a whole, regardless of whether the contacts with the state in which the district court sits would be sufficient if considered alone.... If the defendant's contacts with the United States are sufficient to satisfy the fairness standard of the Fifth Amendment ... then the only limitation on place of trial would be the doctrine of forum non conveniens.
 
 
 95
 397 F.Supp. at 290 (citation omitted). The court in Cryomedics, Inc. continued:
 
 
 96
 The few courts that have explicitly considered the appropriate unit of government with which there must be contacts have all agreed that the aggregation of an alien defendant's contacts with the United States is the proper procedure in a case arising under federal law ....
 
 
 97
 It is difficult to see how International Shoe and its progeny, which dealt with the limits on the jurisdiction of state courts, and on which Spembly bases its arguments, could be read to limit the jurisdiction of a federal court on a federally created cause of action ....
 
 
 98
 397 F.Supp. at 291.
 
 
 99
 Significantly, in Cryomedics the defendant did not challenge the validity of the service. Here too the defendants have not challenged the validity of the service. Even if they have not waived their right to challenge service of process, the issue is: were there sufficient contacts for the court to have personal jurisdiction? On that issue there is no challenge and there can be no question. Failure to challenge service opens the door to inquiry into the sufficiency of the contacts between the defendant and the governmental entity of which the court was a part. Here, that entity was the United States and the fairness standard was the due process clause of the fifth amendment, not of the fourteenth amendment. The territorial limits therefore were the boundaries of the United States, not the state in which the court happened to sit, and the determination of the sufficiency of the contacts to support personal jurisdiction turned on contacts with the nation, not those with the state.
 
 
 100
 Cryomedics, characterized as the leading case accepting the aggregate contacts test, did not blast off without authority.[17] Judge Newman pointed to Edward J. Moriarty & Co. v. General Tire & Rubber Co.,[18] in which the court in an antitrust action against a Greek defendant considered the defendant's ties to the state in which it sat, yet, "argued convincingly that it is not the territory in which a court sits that determines the extent of its jurisdiction, but rather the geographical limits of the unit of government of which the court is a part [especially] 'where national uniformity in enforcing [federal] right should be the true guideline' ". 397 F.Supp. at 290-91.
 
 
 101
 The Cryomedics court also cited Holt v. Klosters Rederi A/S,[19] a suit under the Death on the High Seas Act, in which the court upheld jurisdiction on the basis of a contract exclusively outside the forum state. Furthermore, the Cryomedics court quoted from Engineered Sports Products v. Brunswick Corp.,[20] a patent infringement action, holding that "[d]ue process or traditional notions of fair play and substantial justice should not immunize an alien defendant from suit in the United States because each state makes up only a fraction of the substantial nationwide market for the offending product" 362 F.Supp. at 728, and concluded that an alien "which transacts business in the United States only through other countries and which maintains a place of business only in the country of its incorporation ... has no reason based on fairness to prefer any one particular district to any other" 397 F.Supp. at 292 (quoting Engineered Sports Products, 362 F.Supp. at 728).
 
 
 102
 In 1961 Professor Thomas F. Green, Jr. formulated the aggregate contacts test.[21] Shortly after, in First Flight Co. v. National Carloading Corp.,[22] the court adopted the test in an action against a foreign corporation for damage to cargo. Service was effected under Rule 4(d)(3), but the court clearly expanded the scope of its minimal contact inquiry to the national forum. The court noted that Professor Green had suggested that "state jurisdiction under the Fourteenth Amendment is ... suitable for analogical application to federal jurisdiction under the Fifth Amendment.... The Supreme Court has left no doubt but that the material constitutionality inquiry in this regard concerns not contacts with the physical territory of the court, but rather contacts with the sovereignty of which the court is an arm. And the sovereignty of which a federal court is an arm is, of course, the United States." 208 F.Supp. at 738.
 
 
 103
 Centronics Data Computer Corp. v. Mannesmann, A.G.,[23] was an antitrust action against a German corporation. The court found that it had jurisdiction; otherwise "aliens could commit serious torts or contract breaches without ever having enough contacts with any one forum to give those injured an opportunity to seek redress". 432 F.Supp. at 664.
 
 
 104
 Although it must be admitted that the weight of authority, both in the cases and in the commentary, rejects the aggregate contacts doctrine, I am not persuaded by authority that leads to an irrational and unnecessary result. Judging requires something more than counting how many cases are pro and how many are con. In a federal question case with respect to a matter as important as personal jurisdiction over alien and foreign defendants, I would construe the rules to achieve the objectives of Rule 1. By analogy to International Shoe and its progeny, personal jurisdiction is found in the relationship of the defendants to the nation and the aggregate of their contacts with the nation as a whole. The due process clause of the fifth amendment is at least as effective as the corresponding clause in the fourteenth amendment in assuring fairness to the alien defendant.
 
 V.
 
 105
 Burstein and DeMelo present a superficially attractive, heuristic way out of a bad situation--into a worse situation. It is something like using a sword on the Gordian knot and finding the edge so blunt that it simply mangles half the knot, leaving that part still entangled.
 
 
 106
 I would hold that the district court was right the first time in holding:
 
 
 107
 Since the Congressional statutes support the exercise of personal jurisdiction to the extent of due process, we would need to look to Louisiana state statutes (such as "long-arm"), if at all, for methods of service of process only. No service of process issue is raised.
 
 
 108
 In a claim based upon a federal securities or commodities statute, whether the quality and nature of a foreign defendant's activities support a fair play and substantial justice determination, International Shoe v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), involves a consideration of all of defendant's activities in the United States, not just in the forum state. See Leasco, supra, and Mariash v. Morrill, 496 F.2d 1138 (2nd Cir.1974).
 
 
 109
 Factors to be considered are whether the defendant was doing business in the United States, whether the defendant did an act in this country related to the claim, and whether the defendant caused an effect in the United States by an act done elsewhere.
 
 
 110
 This is a reasonable ad hoc ruling on a hiatus in the Rules. It is not inconsistent with Rule 4(e) and is highly consistent with Rules 1, 82, and 83, and with the objective of the Commodities Exchange Act. It is consistent with the role federal courts are designed to play in the American polity.
 
 
 
 *
 Due to his death on March 27, 1986, Judge Albert Tate, Jr. did not participate in this decision
 
 
 [1]
 "The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." DeMelo v. Toche Marine, Inc., 5 Cir.1983, 711 F.2d 1260, 1264 (citations omitted)
 
 
 [2]
 In short, neither Wolff nor Gourlay is a party in the Rosenberg action; Wolff is a defendant in the Point Landing action and a third-party defendant in the other two actions; Gourlay is a third-party defendant in three actions
 
 
 [3]
 A straddle is the simultaneous purchase and sale of futures contracts, deliveries to be made in different months. Investors have attempted to use straddles in stock options or commodities to generate capital gains and ordinary losses. Commodity Exchange, Inc. v. CFTC, 543 F.Supp. 1340 [1980-1982] Comm.Fut.L.Rep. (CCH) p 21,445 (S.D.N.Y.1982); 1 P. Johnson, Commodities Regulation Sec. 1.15, at 48, 49 (1982)
 
 
 [4]
 Omni never amended its third party complaints to add the commodities law counts. Third party defendants may, however, move to dismiss the primary complaint for failure to state a claim. Fed.R.Civ.P. 14(a)
 Transactions on the London Metals Exchange have been held outside the scope of Sec. 4b of the CEA. Kleinberg v. Bear Stearns & Co., [9184-86] Comm.Fut.L.Rep. (CCH) p 22,613 (S.D.N.Y.1985); de Atucha v. Commodity Exchange, Inc., S.D.N.Y.1985, 608 F.Supp. 510. The plaintiffs' claims may however be cognizable under Sec. 4c(b) of the Act, 7 U.S.C. Sec. 6c(b) and Regulation 32.9, 17 C.F.R. Sec. 32.9, or under Regulation 30.02, 17 C.F.R. Sec. 30.02.
 
 
 [5]
 Lapeyrouse relied on Terry v. Raymond International, Inc., 5 Cir.1981, 658 F.2d 398 and Lone Star Package Car Co. v. Baltimore & Ohio R.R. Co., 5 Cir.1954, 212 F.2d 147. Burstein distinguished Terry and Lone Star
 
 
 [6]
 Section 2(a)(1)(A) provides:
 [T]he Commission shall have exclusive jurisdiction, except to the extent otherwise provided in Sec. 2(a) of this title with respect to accounts, agreements ... and transactions involving contract of sale of a commodity for future delivery, traded or executed on a contract market designated pursuant to Sec. 7 of this title or any other board of trade, exchange, or market.... [N]othing contained in this section shall (i) supersede or limit the jurisdiction at any time conferred on the Securities and Exchange Commission or other regulatory authorities under the laws of the United States or of any State, or (ii) restrict the Securities and Exchange Commission and such other authorities from carrying out their duties and responsibilities in accordance with such laws.
 7 U.S.C. Sec. 2.
 
 
 [7]
 The report accompanying the House bill stated that the CFTC would have exclusive jurisdiction over commodities futures traded on a contract market. H.R.Rep. No. 975, 93rd Cong. 2nd Sess. 28 (1974)
 
 
 [8]
 The SEC, in an amicus brief submitted at the Court's request, agrees that the CFTC has exclusive regulatory jurisdiction over individual discretionary accounts, by virtue of amendments to the CEA enacted in the Commodities Futures Trading Commission Act of 1974. "[W]here the broker and manager of a discretionary commodity account receive commissions based on trade prices rather than share in the customer's profits or losses, the account is not a security within the meaning of the federal securities laws." SEC brf. at 2
 The CFTC, in its amicus brief, which was also requested by the Court, concludes that both the plain language and the legislative history of the 1974 amendments to the Act make clear that Congress intended Section 2(a)(1) (now Section 2(a)(1)(A)) of the Act, 7 U.S.C. Sec. 2, to preclude application of federal securities laws to all transactions involving futures and options on futures including foreign-exchange traded futures contracts, the options on such contracts, and the discretionary commodity accounts that are involved in this case.
 It is unnecessary for the Court to decide whether the accounts in question are securities, since in any event the CEA is preemptive.
 The Court appreciates the efforts expended by the SEC and the CFTC and the excellence of their briefs.
 
 
 [9]
 Both these statements are relied on in Lapeyrouse v. Texaco, Inc., 5 Cir.1982, 693 F.2d 581, 585
 
 
 [10]
 On the fifth amendment-fourteenth amendment due process point, see Fullerton, Constitutional Limits on Nationwide Personal Jurisdiction in the Federal Courts, 79 Nw.U.L.Rev. 1 (1984)
 
 
 [11]
 Judge Randall added this footnote:
 The other leading commentator in the field takes the opposite position. J. Moore, J. Lucas, H. Fink, & C. Thompson, Moore's Federal Practice p 4.41-1 at 4-424 (1982). Since the entire discussion of amenability under rule 4(e) consists of a reference to the discussion of amenability under rule 4(d), id. p 4.24, with no explanation for the similarity in analysis and result despite the difference in language between the two rules, we find Wright & Miller more persuasive.
 693 F.2d 511, 515, n. 5.
 
 
 [1]
 In this opinion the term "alien", when applied to a corporation, refers to a corporation organized under the laws of a foreign country. The term "foreign", when applied to a corporation, refers to a corporation organized under the laws of a state other than the state of its forum
 Wolff is a corporation organized under the laws of Great Britain with its offices in London. Gourlay is a British citizen with his office in Wolff's suite of offices. Neither has an office in the United States.
 
 
 [2]
 International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)
 
 
 [3]
 Justices Black and Douglas opposed the submission of the Rules of Civil Procedure to Congress and their approval by the United States Supreme Court. They had little or no objection to "simple housekeeping details", but they objected strongly to rules which "substantially affected litigants and in practical effect were equivalent of new legislation". Statement by Mr. Justice Black and Mr. Justice Douglas, 374 U.S. 865 (1963). The justices "could see no reason why the extent of a Federal District Court's personal jurisdiction should depend on the existence or nonexistence of a state's 'long-arm statute' ". Id. at 869
 
 
 [4]
 In order dated May 13, 1983
 
 
 [5]
 DeMelo v. Toche Marine, Inc., 711 F.2d 1260 (5th Cir.1983)
 
 
 [6]
 Berger, Acquiring In Personam Jurisdiction in Federal Question Cases: Procedural Frustration under Federal Rule of Civil Procedure 4, 1982 Utah L.Rev. 285, 286
 
 
 [7]
 360 F.2d 103 (2d Cir.1966)
 
 
 [8]
 360 F.2d at 107
 
 
 [9]
 360 F.2d at 108 (emphasis added)
 
 
 [10]
 283 F.2d 593 (3d Cir.1960)
 
 
 [11]
 83 F.R.D. 414, 419 (E.D.Pa.1979)
 
 
 [12]
 "The necessary use of differing state long-arm statutes, and the determination of minimum contacts with a particular state means that the effective benefit and production of many federally created rights can be limited by the law of the state in which the district court sits." Recent Decision, 9 Vand.J.Transnat'l L. 435, 444 (1976)
 
 
 [13]
 In DeJames v. Magnificence Carriers, Inc., 654 F.2d 280 (3d Cir.1981) the Court affirmed a district order dismissing an admiralty claim against a Japanese corporation which did conversion work on American ships in Japan. Service was obtained under a New Jersey long-arm statute. The Court of Appeals found that the defendant's contacts with New Jersey were insufficient to support personal jurisdiction
 In a strong and persuasive dissent, Judge John J. Gibbons argued:
 When a court asserts personal jurisdiction over a foreign defendant on the basis of a state law claim, it must ensure that the forum state does not unduly encroach on a sister state's interests. When a court, state or federal, adjudicates a federal claim, the federalism issue is of no relevance, for the court determines the parties' rights and liabilities under uniform national law. No state intrudes on another's interests. The only relevant interest is the national one. Thus the applicable constitutional due process provision should not be the fourteenth amendment, but the fifth amendment.
 See Stabilisierungsfonds fur Wein et al. v. Kaiser Stuhl Wine Distributors Pty. Ltd. et al., 647 F.2d 200 (D.C.Cir.1981), at 203 & n. 4.... A defendant's national contacts enter into the fifth amendment fairness analysis, for it would be unreasonable to subject to suit in the United States a foreign national defendant who had but one fleeting connection with this country. But it is not necessary, under the fifth amendment due process clause, that the defendant's contacts relate primarily to the particular United States location in which the claim arose. Thus, for example, it would not be unfair under the fifth amendment to subject a foreign national shipper to suit in New Jersey on the basis of an admiralty claim that arose in that state, even if the offending ship was the only one ever to dock in New Jersey, and all of defendant's other ships land in Texas. [T]he availability of witnesses points to the District of New Jersey as the most convenient forum for the litigation.
 654 F.2d at 292.
 
 
 [14]
 Note, Alien Corporations and Aggregate Contacts: A Genuinely Federal Jurisdiction Standard, 95 Harv.L.Rev. 470, 472 (1981)
 
 
 [15]
 Von Mehren v. Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121, 1125 n. 6 (1966)
 
 
 [16]
 397 F.Supp. 287 (D.Conn.1975)
 
 
 [17]
 But see Note, Alien Corporations and Aggregate Contacts: A Genuinely Federal Standard, 95 Harv.L.Rev. 470, 481 (1981)
 
 
 [18]
 289 F.Supp. 381 (S.D.Ohio 1967)
 
 
 [19]
 355 F.Supp. 354 (W.D.Mich.1973). In Holt, as in Cryomedics, the defendant failed to challenge the validity of the service. Cf. Engineering Equipment Co. v. S.S. Selene, 446 F.Supp. 706, 709-10 (S.D.N.Y.1978) in which the court aggregated the national contacts of an alien defendant to determine whether quasi in rem jurisdiction could be exercised
 
 
 [20]
 362 F.Supp. 722 (D.Utah 1973)
 
 
 [21]
 Green, Federal Jurisdiction in Personam of Corporations and Due Process, 14 Vand.L.Rev. 967 (1961)
 
 
 [22]
 209 F.Supp. 730 (E.D.Tenn.1962). The claim was under 49 U.S.C. Sec. 20(11)-(12) (1976)
 
 
 [23]
 432 F.Supp. 659 (D.N.H.1977)